**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**
No. 97-3431

| | | |
|---|---|---|
| Linda Schiernbeck, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Clark Davis and Rosa Davis, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: March 9, 1998
Filed: May 4, 1998

_____

Before BEAM and HEANEY, Circuit Judges, and WATERS,[1] District Judge.

_____

WATERS, District Judge.

Linda Schiernbeck appeals the district court's[2] entry of summary judgment in favor of the Davises on the issue of whether the Davises had a common law and/or statutory duty to install a smoke detector. We conclude that no duty to provide a smoke detector exists in this case, and therefore, we affirm.

_____

[1]The Honorable H. Franklin Waters, United States District Judge for the Western District of Arkansas, sitting by designation.

[2]The Honorable John B. Jones, United States District Judge for the District of South Dakota.

## I.    BACKGROUND

This action was brought by Linda Schiernbeck ("Schiernbeck") against her former landlords, Clark and Rosa Davis (the "Davises").  In October of 1991, Schiernbeck and her now ex-husband, Merlin Schiernbeck, began leasing a house from the Davises.  The Schiernbecks did not have a written lease with the Davises.  The parties orally agreed that the Schiernbecks would pay $150 per month.  They also orally agreed that the Davises would make certain "functional" repairs to the house, e.g., the Davises replaced the wood burning stove with a propane furnace.  In addition, the Davises agreed to allow the Schiernbecks to do some redecorating of the house, e.g., repainting.

Schiernbeck asserts that approximately one month after she moved into the house, she noticed a discolored circular area on one of the walls with a screw inserted in the middle.  Schiernbeck determined that a smoke detector had previously been attached to the wall, however, there was no smoke detector present when she moved into the house.  Schiernbeck contends that she approached Clark Davis and told him about the missing detector and requested that he provide her with a new one.  Schiernbeck further contends that Clark Davis agreed to furnish her with a new smoke detector.

The Davises refute Schiernbeck's assertions and claim that no agreement was ever made with Schiernbeck that the Davises would equip the house with a smoke detector. Clark Davis denies that Schiernbeck ever asked him to purchase a detector for the house.  He does admit that in June of 1992, he purchased a smoke detector for the house and gave it to Schiernbeck.  He claims, however, that he did not know at the time that he purchased the detector, that the old one was missing.  Schiernbeck contends that Clark Davis never provided her with a smoke detector for the house.

The Davises also assert that the affidavit submitted by Schiernbeck in opposition to their motion for summary judgment, in which she states that Clark Davis agreed to provide her a smoke detector, is a sham. The Davises contend that Schiernbeck stated repeatedly at her deposition that she did not ask the Davises to provide her with a smoke detector for the house.

On February 10, 1993, a fire broke out in the house that severely injured Schiernbeck and her daughter. On February 2, 1996, Schiernbeck filed suit against the Davises alleging negligence and breach of contract for failing to provide her with a smoke detector. The Davises moved for summary judgment on the basis that there is no common law or statutory duty owed by a landlord to install a smoke detector in a rental house. On August 1, 1997, the district court granted the Davises' motion for summary judgment. Schiernbeck appeals the district court's decision.

## II.    DISCUSSION

"We review the district court's grant of summary judgment de novo, applying the same standard as the district court did and examining the record in the light most favorable to the nonmoving party." Lang v. Star Herald, 107 F.3d 1308, 1311 (8th Cir.), cert. denied, 118 S. Ct. 114 (1997) (internal quotation marks and citation omitted). "Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds." Holloway v. Lockhart, 813 F.2d 874, 878 (8th Cir. 1987) (citing Fed. R. Civ. P. 56(c)).

As this is a diversity case, South Dakota substantive law applies. See Mudlitz v. Mutual Serv. Ins. Cos., 75 F.3d 391, 393 (8th Cir. 1996) (citation omitted). Thus, the first issue we must determine is whether, under South Dakota law, there is a common law duty on the part of a landlord to provide a tenant with a smoke detector.

**A.  IS THERE A COMMON LAW DUTY?**

Schiernbeck asserts that the Davises had a common law duty to provide her with a smoke detector for the house.  Schiernbeck acknowledges that the general rule regarding the common law duty of a landlord to his or her tenant for dangerous conditions is found in the Restatement (Second) of Torts § 356.  Section 356 provides that "[e]xcept as stated in §§ 357-362, a lessor of land is not liable to his lessee or to others on the land for physical harm caused by any dangerous condition, whether natural or artificial, which existed when the lessee took possession."  Restatement (Second) of Torts  § 356 (1965).

The comments to § 356 make it clear that a lessor is not liable to a lessee for injuries occurring after the lessee has taken possession, even though such injuries resulted from a dangerous condition existing at the time of the transfer, unless one of the exceptions found in §§ 357-362 applies.  Id. at cmt. a.  We have recently stated that the Supreme Court of South Dakota, if given the opportunity, would follow § 356.  Heppler v. Thomson Newspapers, Inc., 105 F.3d 1212, 1214 (8th Cir. 1997) (citing Clauson v. Kempffer, 477 N.W.2d 257 (S.D. 1991)).

Schiernbeck contends that because the Davises agreed to provide her with a smoke detector for the house, the exception found in § 357 applies to her case.  Section 357 states:

> [a] lessor of land is subject to liability for physical harm caused to his lessee and others upon the land with the consent of the lessee or his sublessee by a condition of disrepair existing before or arising after the lessee has taken possession if
>
> (a)     the lessor, as such, has contracted by a covenant in the lease or otherwise to keep the land in repair, and

–4–

(b)     the disrepair creates an unreasonable risk to persons upon the land which the performance of the lessor's agreement would have prevented, and

(c)     the lessor fails to exercise reasonable care to perform his contract.

Restatement (Second) of Torts § 357 (1965).

For § 357 to apply, Schiernbeck must first show that the Davises contracted to repair the leased premises. Schiernbeck states that she asked the Davises to make various functional repairs in the house, and the Davises made such repairs. Thus, Schiernbeck contends that she reasonably believed that when she asked Clark Davis to provide her with a smoke detector, and he agreed, there was an agreement between the parties that the Davises would replace the smoke detector. Schiernbeck asserts that replacing a smoke detector constitutes a "repair" as that term is used in § 357. Specifically, Schiernbeck states that replacing that which no longer works or has been stolen is a repair.

The Davises contend that § 357 is inapplicable to this case because replacing a smoke detector does not fall within the meaning of "repair" as that word is used in the context of a lessor's legal duty to repair. The Davises assert that, even if the replacement of a smoke detector constitutes a "repair," § 357 still does not apply because there was no contract to repair. The Davises contend that there was no agreement, formal or informal, between the parties to replace the smoke detector.

We agree. Even if replacing a smoke detector constituted a "repair," the Davises had no common law duty to provide Schiernbeck with a smoke detector under § 357 because there was no contract to repair.

The comments to § 357 limit a lessor's obligation by stating that § 357 does not apply where the lessor does not contract to repair, "but merely reserves the privilege to enter and make repairs if he sees fit to do so. Likewise the rule has no application where there is no contractual obligation, but merely a gratuitous promise to repair, made after the lessee has entered into possession." Restatement (Second) of Torts § 357 cmt. b(1) (1965).[3]

There is no evidence that the Davises ever promised to provide Schiernbeck with a smoke detector. The only evidence that plaintiff has offered in support of her case is her own affidavit, which conflicts with her earlier deposition testimony, and thus, is unreliable and fails to create a genuine issue of material fact. Specifically, in opposition to the Davises' motion for summary judgment, Schiernbeck submitted her affidavit that stated:

> [d]efendant Clark Davis agreed to provide my family and me with a smoke detector. As I have said in my deposition at pages 54 and 55, I told Mr. Davis it looked to me as if the previous renter had taken the smoke detector from the house. In response, Mr. Davis told me he knew he had to get a smoke detector and that getting a smoke detector was on his list of things to get done. My family and I relied upon Mr. Davis's agreement to provide us with a smoke detector.

Appendix at 124.

Schiernbeck's previous statements in her deposition, however, are not consistent with the statements she made in her affidavit. Namely, Schiernbeck was asked the

---

[3]The Davises assert that even if the court found that there was a promise to replace the smoke detector, such a promise would have been a gratuitous promise because no consideration was given by Schiernbeck. Because the court finds that there is no evidence that a promise to replace the smoke detector was ever made, we do not reach the issue of whether any consideration was given.

following question at page 54 of her deposition testimony, "[d]id you ever have any conversation with Clark or Rosa Davis about smoke detectors, heat detectors, fire extinguishers?" Appendix at 68. Schiernbeck answered:

> A. The only thing I can recall is that I had mentioned to them that – when he was talking about that that renter had – the stuff he had taken and that, I know I had mentioned to him about the smoke detector or what I thought looked like a smoke detector above the doorway because of the – it was like a round, clean circle on the wall and the rest of the wall was very soiled and that, and kind of a much darker ring right around it. There was a screw there and it looked like, you know, the place where a smoke detector had been hanging.
>
> Q. And you mentioned that to Clark Davis, you said?
>
> A. Mm-hmm. I said something about that they [the previous renters] probably had taken that, too.

Appendix at 68. Schiernbeck was also specifically asked in her deposition whether she ever said to the Davises, "I think you ought to get some smoke detectors for this house. . . ." Appendix at 69. Schiernbeck answered, "I didn't say that, no." Id. Schiernbeck also stated that to her knowledge, her ex-husband, Merlin, did not ask the Davises to purchase smoke detectors for the house. Appendix at 70.

The Davises' attorney asked Schiernbeck whether she ever expressed any concerns about the house presenting any fire hazards. Schiernbeck answered:

> A. The electricity – electrical did concern me.
>
> Q. That was the only conversation you had with them about any concerns related to fire with the house; correct?

A. Yeah. The furnace, I know that we had concerns about that. And before I even got to Redfield Merlin had told me that, you know, he would take the place if the – if the – if they had put a furnace in there. Because the – the concern with like wood, burning wood, creote (sic) or whatever they called it, had built up in the chimney and that sort of thing.

Q. That was something you were concerned about before you got there?

A. Well, with that place, yeah.

Q. Yeah. And that was something that Merlin must have passed along to Clark or Rosa?

A. Right. I believe that they has talked more about that than I did. I just. . .

Q. Do you know if Merlin ever talked to Clark or Rosa Davis and expressed his feeling that there ought to be smoke detectors or fire extinguishers or different ways to get out of the building?

A. No. Merlin didn't really talk with them much. He was always at work, and I was usually – if anyone was at home it was me when Clark would stop by.

Appendix at 69-70. Schiernbeck was later asked the question, "[d]id you ever talk to anybody about equipping the house with fire extinguishers or smoke detectors?" Appendix at 70. Schiernbeck answered, "[n]o." Id.

Merlin Schiernbeck stated in his deposition that he never had any conversations with the Davises about fire detectors. Supplemental Appendix at 246. In addition, Merlin Schiernbeck stated that to his knowledge, Schiernbeck never discussed the issue with the Davises. Id.

–8–

Clark Davis stated in his deposition that he purchased a smoke detector on June 25, 1992, while Schiernbeck was renting from the Davises, and that he "gave it [the smoke detector] to Linda [Schiernbeck] at one of the times she paid the rent." Appendix at 15-16. He explained that he purchased the smoke detector because he thought it was a "good idea" and that it was a "safety feature." Appendix at 15. Mr. Davis denied ever having any discussion with Schiernbeck or her ex-husband about a smoke detector either before or after the day he purchased the detector. Id. at 16.

We conclude that there is no genuine issue of material fact as to whether the Davises contracted with Schiernbeck to replace the smoke detector in the rental house. As this circuit has held on other occasions, "parties to a motion for summary judgment cannot create sham issues of fact in an effort to defeat summary judgment." RSBI Aerospace, Inc. v. Affiliated FM Ins. Co., 49 F.3d 399, 402 (8th Cir. 1995) (citing Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d 1361 (8th Cir. 1983)).

At Schiernbeck's deposition, she stated that she told Clark Davis about the missing smoke detector, however, she also stated that she never asked the Davises to provide her with a smoke detector, and furthermore, that she never discussed with anybody the issue of equipping the house with a smoke detector. Thus, even if, in viewing the facts in the light most favorable to Schiernbeck, the court concluded that Schiernbeck told Clark Davis that the detector was missing, that alone, is not enough to create a genuine issue of material fact as to whether the Davises ever agreed to replace the smoke detector.

Schiernbeck made no explanation in her affidavit for why her statements contradicted her earlier deposition testimony, e.g. she did not attempt to show that she was confused or misunderstood the questions she was asked at her deposition. See RSBI Aerospace, 49 F.3d at 402. Indeed, Schiernbeck states in her affidavit that her statements are in accord with her earlier deposition testimony. After a careful review of the affidavit and Schiernbeck's deposition testimony, however, we find that the

–9–

statements are plainly inconsistent, and that the district court correctly determined that Schiernbeck's affidavit did not create a genuine issue of material fact as to whether there was a contract to repair.

In Schiernbeck's reply brief, she argues that she was never asked in her deposition the specific question of what Clark Davis said to her about the missing smoke detector. Schiernbeck asserts that for the Davises' own strategic reasons, defense counsel did not specifically ask Schiernbeck what Clark Davis said to her after she told him that the smoke detector was missing. (Presumably making the inference that if defense counsel had asked the question, Schiernbeck would have testified that Clark Davis' response was that he would replace the smoke detector.)

We find Schiernbeck's argument without merit. As stated above, Schiernbeck was asked at page 54 of her deposition testimony, "[d]id you ever have any conversation with Clark or Rosa Davis about smoke detectors, heat detectors, fire extinguishers?" Appendix at 68. Schiernbeck answered that all she could recall saying to Clark Davis about the subject was that the smoke detector was gone and that the previous renters had probably taken it when they moved out of the house. Schiernbeck was also asked specifically whether she ever told the Davises that they ought to "to get some smoke detectors for this house." Appendix at 69. Schiernbeck answered, "I didn't say that, no." Id. Moreover, Schiernbeck was asked whether she "ever talked to anybody about equipping the house with fire extinguishers or smoke detectors?" Appendix at 70. Schiernbeck replied "[n]o." Id.

If Schiernbeck remembered at the time she gave her deposition that Clark Davis had at anytime promised to provide her with a smoke detector, then she would have offered such information to defense counsel when he asked any of the above questions. The court believes that Schiernbeck was given ample opportunity to divulge the fact that Clark Davis had promised to provide her with a smoke detector if that had

occurred. There was nothing confusing or misleading about defense counsel's questions.

Finally, we note that our decision is in agreement with a majority of the state courts that have held that no common law duty exists on behalf of a landlord to provide a smoke detector to his or her tenant. See, e.g., Rao v. Rodriguez, 923 S.W.2d 176 (Tex. App. 1996) (no common law duty on part of a landlord to provide a tenant with a working smoke detector); Adams v. Miller, 908 S.W.2d 112 (Ky. 1995), abrogated on other grounds, Giuliani v. Guiler, 951 S.W.2d 318 (Ky. 1997) (holding that landlord has no common law duty to use reasonable care to protect tenants from harm and thus, is not liable for injuries to tenant due to no smoke detector).

Thus, we conclude, that there is no evidence that the Davises contracted to provide Schiernbeck with a smoke detector. Therefore, there is no genuine issue of material fact as to whether the Davises had a common law duty to install a smoke detector into the house that Schiernbeck rented.

## B.  IS THERE A STATUTORY DUTY?

Schiernbeck asserts that South Dakota Codified Law § 43-32-8 (Michie 1997), modified the common law and imposes an affirmative duty upon landlords to provide their tenants with fit, habitable and safe places to live, and the failure to do so results in liability to the landlords. Schiernbeck contends that the Davises' failure to replace her smoke detector is a violation of § 43-32-8.

The Davises assert that Schiernbeck is asking the court to create a duty where none exists, and contend that this is not within the power or function of a federal court. The Davises further assert that under Erie R. Co. v. Tomkins, 304 U.S. 64 (1938), the court is obligated to apply the law of South Dakota to the case, and that no duty exists under South Dakota law for a landlord to provide a tenant with a smoke detector. The

Davises contend that if a duty should exist, the power to create such a duty lies with the state courts. In addition, the Davises assert that replacing a smoke detector does not come within the meaning of "repair" under § 43-32-8.

South Dakota law provides that:

[i]n every hiring of residential premises, whether in writing or parol, the lessor shall keep the premises and all common areas in reasonable repair and fit for human habitation and in good and safe working order during the term of the lease except when the disrepair has been caused by the negligent, willful or malicious conduct of the lessee or a person under his direction or control. The lessor shall maintain in good and safe working order and condition all electrical, plumbing or heating systems of the premises, except when the disrepair has been caused by the negligent, wilful or malicious conduct of the lessee or a person under his direction or control.

The parties to the lease or hiring of residential premises may not waive or modify the requirements imposed by this section; however, the lessor may agree with the lessee that the lessee shall perform specified repairs or maintenance in lieu of rent.

The provisions of this section shall be in addition to any covenants or conditions imposed by law or ordinance or by terms of the lease. Nothing in this section shall be construed to alter the liability of the lessor or lessee of residential premises for injury to third parties.

S.D. Codified Laws § 43-32-8 (Michie 1997). The statute does not define, however, what constitutes "in reasonable repair," "fit for human habitation," or "in good and safe working order."

Schiernbeck relies on the case of Shroades v. Rental Homes, Inc., 427 N.E.2d 774 (Ohio 1981), where the court, in interpreting a statute similar to the one in this case, held that a landlord could be held liable for injuries sustained on residential

–12–

premises which were proximately caused by his failure to fulfill his statutory duties to repair an outside stairway of an apartment building. The court stated that the statute:

> imposes duties on the landlord to make repairs and do whatever necessary to put and keep the premises in a fit and habitable condition. Furthermore, the purpose of the statute is to protect persons using rented residential premises from injuries. A violation of a statute which sets forth specific duties constitutes negligence *per se*.

Id. at 778 (citations omitted).

Schiernbeck also cites Watson v. Sellers, 385 S.E.2d 369 (S.C. App. 1989), where the court stated that "the vast majority of states now reject the thesis that a landlord is immune from tort liability for injuries sustained on rented premises . . . ." Id. at 374 (footnote omitted). The court in Watson held that a similar South Carolina statute conveyed an intent on the part of the legislature to "provide for a cause of action for injuries resulting from the failure of the landlord, after notice, to keep rented residential premises in repair." Id. Schiernbeck asserts the South Dakota legislature, in enacting § 43-32-8, also wanted to provide tenants with a cause of action against a landlord for failure to repair.

As stated above, § 43-32-8 requires that the lessor keep the leased premises "in reasonable repair and fit for human habitation and in good and safe working order during the term of the lease. . . ." S.D. Codified Laws § 43-32-8 (Michie 1997). We do not believe that equipping the leased premises with a smoke detector constitutes keeping the premises in "reasonable repair." As this court once recognized, "there are some varying shades of difference in the general definition of the term 'repair.' But there is none more apt and comprehensible than the accepted dictionary definition: 'To restore to a sound or good state after decay, injury, dilapidation, or partial destruction.'" American Bonding Co. of Baltimore v. City of Ottumwa, 137 F. 572, 579 (8th Cir. 1905). Schiernbeck cites an additional part of the dictionary's definition which states:

"[t]he word 'repair' contemplates an existing structure or thing which has become imperfect, and means to supply in the original existing structure that which is lost or destroyed, and thereby restore it to the condition in which it originally existed, as near as may be." Black's Law Dictionary 1298 (6th ed. 1990). Schiernbeck relies on the phrase in the definition "to supply . . . that which is lost or destroyed" to include replacing a missing smoke detector in the definition of repair. We conclude, however, that when reading the entire definition, the term "repair" does not encompass replacing a missing smoke detector.

As the court noted in American Bonding, "[i]t is impracticable, as well as unwise," to attempt to lay down any rule on what constitutes a repair, but each case must be decided "in the light of all the facts and circumstances presented. . . ." Id. at 579 (internal quotation marks and citation omitted). In this case, we believe that replacing a smoke detector in leased premises does not constitute a repair, as that term is generally used. See also Dowler v. Boczkowski, 691 A.2d 314 (N.J. 1997) (landlord could not be held liable for negligent repair because placement of a smoke detector was not a repair as that term is ordinarily used).

In addition, we do not believe that the Davises were required to replace the smoke detector in order to make the rental house "fit for human habitation." In both of the cases Schiernbeck cites, the issue was whether the lessor could be liable for failure to make the necessary repairs to keep the premises in a "fit and habitable" condition. See Shroades, 427 N.E.2d at 778; Watson, 385 S.E.2d at 374. The unhabitable condition, however, was collapsing and dilapidated staircases. Clearly, unstable stairs create a place that is unfit for human habitation, as does a lack of running water, heat, or electricity. We do not believe, however, that a lessor, under the language of § 43-32-8, is required to equip his or her residential premises with smoke detectors, fire extinguishers, carbon monoxide detectors, etc. in order to make the leased premises "fit for human habitation."

Furthermore, we do not believe that a lessor is required to provide such items to keep the premises in "good and safe working order." Schiernbeck urges this court to read the statute to require that a lessor "keep the premises safe." Schiernbeck asserts that clearly a residence is not "safe" without a smoke detector. We disagree with Schiernbeck's reading of the statute. The statute, when read carefully, does not state that the leased premises must be kept safe. On the contrary, the statute says that the lessor must keep the residential premises "in good and safe working order." There is a notable difference between the two statements. A lessor is not required under the statute to keep the premises safe, or to install a smoke detector.[4] It is this court's function to "interpret and apply, rather than to formulate and establish, state law. In diversity cases where, as here, the highest state tribunal has not definitely decided a legal issue, we attempt to determine how that court would decide the matter." Schultz & Lindsay Const. Co. v. Erickson, 352 F.2d 425, 435 (8th Cir. 1965). We conclude that the district court properly held that § 43-32-8 does not impose a duty upon landlords to install smoke detectors onto their residential premises.

In addition, the statute also states that, "[t]he lessor shall maintain in good and safe working order and condition all electrical, plumbing or heating systems of the premises. . . ." S.D. Codified Laws § 43-32-8 (Michie 1997). A smoke detector is not a part or function of either the electrical, plumbing or heating systems of a house.

Therefore, we conclude, that § 43-32-8 does not impose a statutory duty upon a lessor to install a smoke detector in his or her residential premises. Schiernbeck has not pointed the court to any other South Dakota statutes or ordinances that require a lessor to install smoke detectors, and thus, there is no genuine issue of material fact as

---

[4]We note that the South Dakota legislature could have enacted a smoke detector statute. See, e.g., Tex. Prop. Code Ann. § 92.259 (Vernon 1995 and Supp. 1997) (lessor can be held liable for not providing lessee with smoke detector).

to whether the Davises had a statutory duty to provide Schiernbeck with a smoke detector.

### C. Remedies

Schiernbeck contends that the district court erred when it held that even if the Davises owed a duty under § 43-32-8 to install a smoke detector, Schiernbeck failed to avail herself of the remedies available to her under South Dakota Codified Law § 43-32-9 (Michie 1997). Because the court concludes that the Davis owed Schiernbeck no common law or statutory duty to install a smoke detector, we do not reach the issue of whether Schiernbeck's remedies are limited to those set out in § 43-43-9.

## III. CONCLUSION

The Davises owed Schiernbeck no common law and/or statutory duty to install a smoke detector. We affirm the district court's decision.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

–16–