In the
United States Court of Appeals
For the Seventh Circuit

No. 99-1192

Richard Thorn and Pat Curran,

Plaintiffs-Appellants,

v.

Sundstrand Aerospace Corporation,

Defendant-Appellee.


Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 95 C 50099--Philip G. Reinhard, Judge.


Argued September 23, 1999--Decided March 20, 2000




  Before Posner, Chief Judge, and Manion and Rovner,
Circuit Judges.



  Posner, Chief Judge.  Thorn and Curran brought
suit against Sundstrand Corporation under the Age
Discrimination in Employment Act, 29 U.S.C.
sec.sec. 621 et seq. The claims of the two
plaintiffs have little in common; though both
plaintiffs were "riffed" (that is, laid off
pursuant to a reduction in force (RIF)) in 1993,
they worked at very different jobs in different
departments of Sundstrand's aerospace division
and under different supervisors. These are really
two separate cases. The district court granted
summary judgment for Sundstrand in both. As the
plaintiffs point out, the district court's
opinions are replete with findings that are not
proper in summary judgment proceedings, for
example, findings that credit fiercely contested
testimony. Continental Casualty Co. v. Anderson
Excavating & Wrecking Co., 189 F.3d 512, 520 (7th
Cir. 1999). But since the review of summary
judgment is plenary, errors of analysis by the
district court are immaterial; we ask whether we
would have granted summary judgment on this
record. Grun v. Pneumo Abex Corp., 163 F.3d 411,
419 (7th Cir. 1998).

There is much discussion in the briefs of whether the McDonnell Douglas formula for determining the propriety of summary judgment in an employment discrimination case is applicable to RIFs. The answer, as we reemphasized recently, is "yes." Bellaver v. Quanex Corp., 200 F.3d 485, 493-94 (7th Cir. 2000); see also Beaird v. Seagate Technology, Inc., 145 F.3d 1159, 1165 (10th Cir. 1998); LeBlanc v. Great American Ins. Co., 6 F.3d 836, 842 (1st Cir. 1993). The McDonnell Douglas formula enables the plaintiff to shift the burden of production to the defendant upon presenting satisfactory evidence that he is a member of the statutorily protected class (in this case, workers 40 years old or older), that he is performing his job satisfactorily, and that (if it is a case of discharge or layoff allegedly motivated by age discrimination) he was replaced by a much younger worker. The defendant must then produce evidence that it had a noninvidious reason for the discharge--in an age discrimination case, that the reason was not the plaintiff's age. In the case of a RIF, the usual noninvidious reason is that the employer, having decided in good faith that he should reduce the size of his workforce, included the plaintiff within the class of workers to be laid off for reasons unrelated to any discriminatory considerations.

Nothing about this reason calls for modifying the McDonnell Douglas formula; but in some RIF cases the plaintiff is not replaced, and that calls for a slight modification. The plaintiff must present satisfactory evidence either that someone else (in an age-discrimination case, someone much younger than the plaintiff, O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312-13 (1996); Richter v. Hook-SupeRx, Inc., 142 F.3d 1024, 1028-29 (7th Cir. 1998); Keathley v. Ameritech Corp., 187 F.3d 915, 920 (8th Cir. 1999)), is now doing the work he was doing; or, if the work itself has vanished--maybe the entire division in which he worked was closed down--that the employer found a job elsewhere in the company for a much younger person who had also lost his job when the division was shut down. Showalter v. University of Pittsburgh Medical Center, 190 F.3d 231, 235 (3d Cir. 1999); cf. Bellaver v. Quanex Corp., supra, 200 F.3d at 494; Beaird v. Seagate Technology, Inc., supra, 145 F.3d at 1165.

We must apply this standard to the facts viewed as favorably to the plaintiffs as the record

warrants. We begin with Thorn. A department manager in the aerospace division, Thorn lost his position when his department was merged with another one and a former supervisor of his named Schneeberger was named head of the enlarged department. Schneeberger made Thorn a contract administrator. That was in September 1992. Thorn was then 61 years old and Schneeberger, who was in his early forties, told him "we believe you are only going to be here for another year or so," although Thorn, whose performance evaluations were uniformly glowing, had given no indication of wanting to retire. Thorn's new job was computer-intensive and he requested training on certain software used in the job, but Schneeberger refused to grant the request even though other contract administrators had been given such training and Thorn especially needed it since the job was a new one for him.

The RIF was announced the following year. Sundstrand's RIF policy required retention of the more senior employee when two employees (of whom one had to be let go) had "substantially equivalent" job performance and skills. For 1993 Thorn was initially rated a 6, while three of the retained workers in the department, all of whom were both much younger in years and junior in service, only had ratings of 5. Schneeberger, however, reduced Thorn's rating to 5 shortly before the RIF, and, after the RIF, altered the original performance evaluation of Thorn-- prepared by Thorn's then manager--to eliminate all the positive statements in the original evaluation, though there had been no complaints from customers or coworkers about Thorn's performance--or, for that matter, from Schneeberger.

One of the contract administrators who was retained when Thorn was let go was a man in his thirties named Foots. A problem employee, Foots was deficient in communication and interpersonal skills, was inattentive to detail and as a result made many errors, failed to respond to customer orders in a timely manner and in consequence accrued a large number of customer complaints, was repeatedly criticized by his supervisors, including Schneeberger, for missing deadlines, was away from his desk too much, ignored the nuts and bolts of his job, needed to "get back to the basics in 1993 and hone his contracting skills," and, according to Schneeberger himself, was "not doing his job, which causes much extra work for others." Another young person who was retained, Smiley, was described in the following flattering terms by Schneeberger: "AVOIDS NEW challenges.

Has stated that she does not want to learn new customers. No interest in advancing education." Thorn, the oldest person in his department by 15 years, was among three members of the department laid off, all of whom were over 40.

Schneeberger's stated reason for including Thorn in the RIF was low productivity. Yet Thorn had more customers, more complex contracts, and more orders than any of his peers who were retained. What is more, in striking contrast to Smiley, Thorn requested additional work from Schneeberger, who refused to give it to him. Though by all objective measures Thorn carried the heaviest workload in the department, there were no complaints about the quality of his work.

Although Schneeberger's determination of whom to riff was reviewed by an internal company committee, the committee's inquiry was perfunctory. The committee asked Schneeberger only about the weaknesses, and not the strengths, of the employees selected for the RIF, and did not ask him to compare their strengths and weaknesses with those of the employees to be retained, such as the marginal Foots and the lackadaisical Smiley. The committee, however, at the insistence of the company's lawyer, who sat in on its deliberations, refused to allow Schneeberger to take notes of the proceeding, lest Thorn obtain them in litigation. The review proceeding appears to have been "a liability shield invented by lawyers." Shager v. Upjohn Co., 913 F.2d 398, 405 (7th Cir. 1990).

By presenting satisfactory evidence that he was performing up to his employer's expectations (Sundstrand contested this, but given the evidence of Schneeberger's alteration of Thorn's personnel records, the company's position cannot be treated as established for purposes of summary judgment) and that when he was riffed his work was given to much younger employees, Thorn placed on Sundstrand the burden of presenting satisfactory evidence that Thorn had been selected for the RIF for noninvidious reasons. Sundstrand presented evidence, all right, but it was sharply contested. Thorn presented credible evidence that if believed--and a reasonable jury would be entitled to believe it--showed that Sundstrand had not riffed Thorn for the reason it gave, his low productivity; he was the most productive worker in his department. It does not follow that he was selected for the RIF because of his age. But a jury that disbelieves the

reasons given by the employer is free to infer (though not compelled to do so) that the real reason was an invidious one, in this case Thorn's age. E.g., Jackson v. E.J. Brach Corp., 176 F.3d 971, 984 (7th Cir. 1999); Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1123 (7th Cir. 1994); Fisher v. Vassar College, 114 F.3d 1332, 1338 (2d Cir. 1997) (en banc). Sundstrand's motion for summary judgment should have been denied. In so ruling, we do not predict the outcome of the trial, and we remind the reader that our description of the facts was tilted as favorably to Thorn as the record permits, as of course we're required to do in considering a motion for summary judgment.

We move to Curran's case, which is much weaker. An engineer engaged primarily in developing and marketing new technologies, he spent most of his time on a product called a vortex turbine, but he was taken off that project shortly before the RIF, which hit him at the age of 50. The RIF required a reordering of priorities, and a decision was made to focus on current products, making Curran a prime candidate for being riffed. The younger person, Jacobs by name, who was retained Curran claims because he was younger, was less experienced than Curran and (unlike Curran) lacked an engineering degree. But he was working on products that Sundstrand, although it wanted to deemphasize them, already marketed and intended to continue marketing. Curran argues that the department head, Linton, removed him from the vortex-turbine project in order to set him up for the RIF, but this is rank speculation. Anyway, the vortex turbine, being at least a year away from going into production, didn't fit into Sundstrand's plan to focus on immediately profitable products. So even if Curran had still been working on the project, he might well have been riffed. Because he thus was not "substantially equivalent" in the relevant respects to Jacobs, the younger worker who was retained, his supplemental claim of breach of contract, which is based on the language of the RIF policy (which Sundstrand for purposes of the appeal concedes is a binding contract), also fails.

Curran lays great stress, understandably but in the end unavailingly, on what in retrospect was a foolish tactic by Sundstrand's lawyers. When Linton was asked at his deposition what criteria his superiors had told him to employ in making selections for the RIF, he answered that he was to decide "which people did we feel have the

longest-term potential for those whose product lines we were eliminating." Later--after Curran had pointed to the quoted passage as being evidence of age discrimination (because of the reference to "longest-term potential," which Curran treats as a synonym for "youngest")-- Linton submitted an errata sheet in which he sought to change the quoted words to "which people were associated with the products that had the longest term potential versus those whose product lines we were eliminating." Thus the words "did we feel have the longest-term potential for" were to be replaced by "were associated with the products that had the longest term potential versus." The reason given for making the correction was that the original language was "garbled." Garbled it was, though it was not an error in transcription; not only did the court reporter state in an affidavit that Linton's testimony was correctly transcribed, but Linton could not have remembered the exact words that he had stated months before at his deposition. Had he said that "for" was really "versus," it is possible that he might have been correcting an error in transcription. But it is unreasonable to suppose that he remembered that he had said "were associated with the products that had the longest term potential versus" rather than "did we feel have the longest-term potential for."

What he tried to do, whether or not honestly, was to change his deposition from what he said to what he meant. Though this strikes us as a questionable basis for altering a deposition, see Greenway v. International Paper Co., 144 F.R.D. 322, 325 (W.D. La. 1992) ("a deposition is not a take home examination"), it is permitted by Fed. R. Civ. P. 30(e), which authorizes "changes in form or substance" (emphasis added); Podell v. Citicorp Diners Club, Inc., 112 F.3d 98, 103 (2d Cir. 1997), though fortunately the rule requires that the original transcript be retained (this is implicit in the provision of the rule that any changes made by the deponent are to be appended to the transcript) so that the trier of fact can evaluate the honesty of the alteration. We also believe, by analogy to the cases which hold that a subsequent affidavit may not be used to contradict the witness's deposition, e.g., Piscione v. Ernst & Young, L.L.P., 171 F.3d 527, 532-33 (7th Cir. 1999); Bank of Illinois v. Allied Signal Safety Restraint Systems, 75 F.3d 1162, 1168-69 (7th Cir. 1996); Russell v. Acme-Evans Co., 51 F.3d 64, 67-68 (7th Cir. 1995); Schiernbeck v. Davis, 143 F.3d 434, 437-38 (8th Cir. 1998); Raskin v. Wyatt Co., 125 F.3d 55, 63 (2d Cir. 1997); cf. Sullivan v. Conway, 157 F.3d

1092, 1096-97 (7th Cir. 1998), that a change of substance which actually contradicts the transcript is impermissible unless it can plausibly be represented as the correction of an error in transcription, such as dropping a "not."

Sundstrand didn't help itself by Linton's altering his deposition. If at trial Curran tried to use Linton's garbled phrase to impeach his testimony, or as an admission, Linton could explain what he meant, and it would be for the jury to decide whether the explanation was truthful. He could not remove the issue from the jury by altering the transcript of his deposition. The tactic was foolish rather than merely otiose because it suggests guilty knowledge and merely riveted the plaintiff's attention upon a passage that would otherwise have been dismissed by the trier of fact as terminally muddled. But a reasonable jury could not infer from Sundstrand's clumsy handling of the muddle that Curran was a victim of age discrimination. Curran's theory is that what Linton was trying to say was that he was trying to retain those employees, such as Jacobs, who had the longest-term potential--that is, were youngest--among those working on products that were being deemphasized (for Linton himself admitted that "deemphasizing" would have been a more accurate term for the fate of these products than "eliminating"). But neither in semantics nor in economics is having "longest-term potential" a synonym for being "youngest."

To explain, in making RIF decisions an employer is free to decide which employees are likeliest to contribute most to the company over the long haul. Furr v. Seagate Technology, Inc., 82 F.3d 980, 987 (10th Cir. 1996); Watkins v. Sverdrup Technology, Inc., 153 F.3d 1308, 1317 (11th Cir. 1998); Brocklehurst v. PPG Industries, Inc., 123 F.3d 890, 896 (6th Cir. 1997). It would be a foolish RIF that retained an employee who was likely to quit anyway in a few months while riffing one likely to perform well for the company over a period of years. High turnover of skilled workers can be very harmful to a company. The worker who leaves may take with him trade secrets valuable to a competitor or the benefits of specialized training that the employer had given him, at some expense, in the hope of recouping the expense in the worker's superior productivity now to be enjoyed by another employer. Since younger employees tend to be more mobile than older ones, there is no basis for an inference that employers interested in the long-

term potential of an employee prefer young to old. But without such an inference Curran has no case, and we conclude therefore that summary judgment was properly granted for Sundstrand in his case. Of course, the fact that Sundstrand's lawyer permitted or encouraged Linton to try to change his deposition suggests that maybe Linton really did mean "youngest" by "longest-term," but this is too thin a thread on which to hang a verdict for him. When a defendant seeks summary judgment, the court must decide whether, if the record compiled in the summary judgment proceeding were a trial record, a reasonable jury could return a verdict for the plaintiff. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The contretemps over the altered deposition would not be enough by itself to justify a verdict for Curran, and there is nothing else.

    The judgment in Thorn's case is reversed and the case remanded for trial, while the judgment in Curran's case is affirmed.