Carol RICHARDS, Plaintiff,

v.

**FARNER–BOCKEN COMPANY,**
Defendant.

No. C 00–3014–MWB.

United States District Court,
N.D. Iowa,
Central Division.

May 30, 2001.

Scott L. Bandstra and Christopher Kragnes, Des Moines, IA, for Plaintiff Carol Richards.

Jon C. Sogn of Lynn, Jackson, Schultz & Lebrun, P.C., Sioux Falls, SD, and Michael Giudicessi of Faegre & Benson, L.L.P., Des Moines, IA, for Defendant Farner–Bocken.

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BENNETT, Chief Judge.

### TABLE OF CONTENTS

I. **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .982
 A. *Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .982
 B. *Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .984

II. **LEGAL ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .986
 A. *Standards For Summary Judgment* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .986
 1. *Requirements of Rule 56* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .986

2. The parties' burdens ............................................987
3. Summary judgment in employment cases ............................987
B. Claims Not At Issue ............................................989
1. Gender discrimination ........................................989
2. Retaliation claims ...........................................989
3. Untimely claims ..............................................991
C. Age Discrimination ............................................992
1. Reeves .......................................................992
2. Richards's evidence ..........................................994
D. Disability Discrimination .....................................997
1. The pertinent position .......................................998
2. Essential functions .........................................1000
3. Reasonable accommodation .....................................1001
a. The "C-store picker" position ..............................1002
b. The cigarette stamper and picker position(s) ...............1005
E. Wrongful Discharge ...........................................1006
F. Punitive Damages .............................................1008
G. Deficiencies In Pleading Relief ..............................1009

III. CONCLUSION .................................................1010

Following termination of her employment, plaintiff Carol Richards brought the present action against her former employer, defendant Farner–Bocken Company, alleging age, gender, and disability discrimination in violation of state and federal statutes, and a state common-law claim of retaliatory discharge, in violation of Iowa public policy, for asserting worker's compensation claims. Trial in this matter is set to begin on August 6, 2001. However, Farner–Bocken now seeks summary judgment on all of Richards's claims.

## I. INTRODUCTION

### A. Factual Background

Although the disposition of a motion for summary judgment ordinarily depends upon whether or not there are genuine issues of material fact, the present recitation of the factual background to this litigation is not an attempt to provide an exhaustive examination of every pertinent factual dispute. Instead, it attempts to provide only a statement of the nucleus of undisputed facts and sufficient indication of key factual disputes to put in proper context the plaintiff's claims and the defendant's motion for summary judgment.

Plaintiff Carol Richards, who is a white female, contends that she was wrongfully and discriminatorily terminated from her employment at Farner–Bocken in December of 1998 when she was 55 years old. Farner–Bocken supplies food, paper goods, candy, cigarettes, and other goods to independent convenience stores and other retail outlets. During her employment with Farner–Bocken, which began in May of 1997, Richards worked primarily as a "picker," that is, an employee in Farner–Bocken's warehouse who moved up and down the aisles "picking" items in a customer's order from the warehouse shelves or bins and placing them into a plastic box container called a "tote." Pickers used scanners to read bar codes on products and totes so that Farner–Bocken could keep track of each step in the process of filling customers' orders. When a customer's order was complete, the picker would place the tote containing the requested items on a conveyor belt, which transported the tote to a loading area to be loaded onto a truck for delivery to the customer's store. In addition to working as a "picker," Richards worked briefly as a forklift operator in the fall of 1997 in Farner–Bocken's new warehouse during the course

of the move of all of Farner–Bocken's warehouse operations from its old warehouse to the new facility. However, on or about November 1, 1997, Richards returned to her former position as a "picker," and the forklift operators from the old warehouse, all of whom were male, moved to the new warehouse.

On November 18, 1997, Richards filed a worker's compensation "first report of injury" concerning an ankle problem. Her doctor placed her on work release, because of the ankle problem, from November 18, 1997, until early January of 1998. When Richards returned to work in January of 1998, she worked as a "C-store picker"[1] for the remainder of the month. However, she was off work again owing to continued ankle problems from the end of January, 1998, until May 19, 1998. During that time, in March of 1998, Richards had surgery on her ankle.

Richards returned to work on May 19, 1998, but subject to various physical restrictions, including a restriction to sedentary, light-duty work and restrictions on lifting. Consequently, she worked in various light-duty tasks for several weeks. In late July or early August, Richards was transferred to a "hand-stamping" job in the area of the warehouse devoted to filling customer orders for cigarettes. "Hand stamping" involved placing tax revenue stamps on packages of cigarettes that were of odd sizes, and so could not be automatically stamped by machine. The hand stamper removed cartons of cigarettes from the totes brought to the hand-stamping area by "cigarette pickers," opened the cartons, placed the correct revenue stamps on the individual cigarette packs, and using an iron, which resembles a household iron, affixed the stamps to the cigarette packs. The hand stamper then replaced the cigarette packs in the cartons, returned the cartons to the tote, scanned the

tote, and placed it onto a conveyor belt for transport to the loading area for shipment to the customer's store. The totes used in the cigarette area of the warehouse came in three sizes: small, which held about 7 cartons of cigarettes and weighed approximately 7 pounds when filled; medium, which held about 15 to 20 cartons and weighed about 15 to 20 pounds when filled; and large, which held about 25 to 30 cartons and consequently weighed about 25 pounds when filled.

Richards and Farner–Bocken dispute whether workers in the hand-stamping area rotated between "picking" and "stamping," as Farner–Bocken contends, or whether "cigarette picker" and "hand stamper" were separate and distinct positions, as Richards contends. However, the parties agree that Richards was allowed to work exclusively as a hand stamper, and that the other employees in the area consequently worked exclusively or almost exclusively as pickers at that time. The parties also agree that Richards received some assistance with the lifting part of the hand-stamping job from the picker or pickers in the area. Richards and Farner–Bocken also dispute whether Richards's transfer to the "hand-stamping" position was temporary, light-duty employment, created specifically to accommodate Richards during her recovery, as Farner–Bocken contends, or a permanent transfer to a position that had to be filled, as Richards contends.

The parties agree that, at least initially, Richards's ankle injury was expected to improve and that everyone anticipated that the physical restrictions imposed by that injury would be temporary. However, despite the parties' expectations of improvement, during the fall of 1998, Richards's treating physicians began to have concerns that some degree of disability would be

---

1. A "C-store picker" picked items for convenience stores.

permanent, or at least that the injury would require significant further treatment in the future, and how soon that further treatment was required would depend upon how much strain Richards put on her ankle. Therefore, in late November or early December, Farner–Bocken received doctors' reports that Richards had reached maximum medical improvement as to her ankle injury. At about the same time, on November 27, 1998, Richards filed a "first report of injury" concerning another injury, this time to her shoulder, that occurred during her performance of the hand-stamping job. She was off work from November 27, 1998, to December 9, 1998, owing to this shoulder injury.

On December 8, 1998, Richards and Farner–Bocken settled Richards's worker's compensation claim arising from her earlier ankle injury for $8,000, although Farner–Bocken contends that there was some dispute between the parties as to whether the injury was work-related. In light of reports that Richards had reached maximum medical improvement on her ankle injury, Farner–Bocken officials Paul Francis, Chief Financial Officer, and Dave Crawford, Director of Operations, concluded that Farner–Bocken was no longer willing to allow Richards to work in what they regarded as temporary, light-duty employment in the hand-stamping position. Therefore, on December 9, 1998, Crawford informed Richards, in a telephone call recorded by Richards's answering machine, that the hand-stamping job was no longer available. Richards's physical limitations prevented her from returning to her former position as a "picker" and so she was told not to return to work at Farner–Bocken.

Administrative complaints and this litigation ensued.

## B. Procedural Background

On November 2, 1998, prior to her discharge, Richards filed a complaint with the Iowa Civil Rights Commission (ICRC), which was cross-filed with the Equal Employment Opportunity Commission (EEOC), in which she alleged age, disability, and sex discrimination, but did not allege retaliation. On December 14, 1998, Richards filed an amended complaint with the ICRC, which alleged that she was laid off and was not being accommodated, but again did not allege retaliation. After she received a "right-to-sue" notice from both the state and federal agencies, Richards filed the present action on February 15, 2000.

In her Complaint, Richards alleges five causes of action. Richards's first three causes of action are premised on violations of federal anti-discrimination statutes. First, in Cause of Action A, Richards alleges gender discrimination in violation of Title VII, 42 U.S.C. § 2000e *et seq.* In support of this cause of action, Richards alleges that Farner–Bocken "discriminated against [her] by terminating her and retaliating against her for complaining about perceived discrimination with respect to terms and conditions of her employment." Complaint, Cause of Action A, ¶ 31. Next, in Cause of Action B, Richards alleges disability discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12102 *et seq.* Specifically, Richards alleges that her "work-related injuries to her left foot and right shoulder and arm substantially limited her in her major life activities," that she was qualified to perform the essential functions of her position at Farner–Bocken with reasonable accommodation, but that "Defendant refused to accommodate [her] disabilities and in terminating [her], Defendant unlawfully discriminated against her based upon her disability or perceived disability." *Id.* at

Cause of Action B, ¶¶ 35–37. In her third cause of action, Cause of Action C, Richards alleges age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* This cause of action is based on allegations that Richards is a member of a protected class, as a female over 40 years of age, that she "met the minimum qualifications for Defendant's light duty position," but that she "suffered adverse employment actions when Defendant terminated her and retaliated against her for complaining about perceived discriminatory treatment," [2] that she was discharged, and that younger people with similar qualifications replaced her. *See id.* at Cause of Action C, ¶¶ 41–44.

Richards's final two causes of action are pursuant to state law. In Cause of Action D, Richards alleges employment discrimination in violation of IOWA CODE § 216.1 *et seq. See id.* at Cause of Action D. This cause of action alleges that "Defendant discriminated against Richards because of her gender, age, disability and/or perceived disability and in retaliation for engaging in protected activity." *Id.* at ¶ 48. Finally, in Cause of Action E, Richards alleges a state common-law cause of action for wrongful discharge in violation of public policy. *See id.* at Cause of Action E. This cause of action asserts that Richards filed worker's compensation claims for two separate work-related injuries, and that the day after she settled her first worker's compensation claim with Farner–Bocken, she "returned to Defendant's place of employment to work after her second work-related injury, [but] she was laid off and/or terminated because Defendant alleged that it was eliminating the light duty work." *Id.* at ¶¶ 52–55. Richards alleges further that, after she was discharged, Farner–

Bocken "employed younger people in the above-mentioned light duty position" and that Farner–Bocken's "discharge of Richards was causally connected to her filing her workers' compensation claims." *Id.* at ¶¶ 56–57.

As relief on all of her claims, Richards seeks judgment declaring that Farner–Bocken's conduct was in violation of state and federal statutes and directing Farner–Bocken to take affirmative steps to eliminate unlawful employment practices. *See id.* at Section VI, ¶ 61(a) & (b). Richards also seeks awards of back pay, front pay, and lost past and future benefits pursuant to the state and federal statutes, *see id.* at ¶ 61(c), as well as compensatory and punitive damages, costs of the action, and reasonable attorney's fees pursuant to Tile VII. *Id.* at ¶ 61(d) & (e). However, neither in her prayer for relief nor in Cause of Action C itself does Richards allege that any age discrimination was "willful" or pray for liquidated damages under the ADEA. *See* 29 U.S.C. § 626(b). Richards also seeks reinstatement to her employment with Farner–Bocken with her previous benefits, pay, and any promotions she would have accrued but for Farner–Bocken's wrongful conduct, and such other relief as the court deems appropriate. *Id.* at ¶ 61(f) & (g).

Farner–Bocken answered Richards's Complaint on March 29, 2000. Almost a year later, on March 5, 2001, Farner–Bocken filed the summary judgment motion presently before the court, seeking judgment in its favor on all of Richards's causes of action. Richards resisted Farner–Bocken's motion for summary judgment on March 27, 2001. Farner–Bocken filed a reply in further support of its mo-

---

**2.** In Richards's Complaint, Richards alleges that this age discrimination was in violation of Title VII, *see* Complaint, Cause of Action C, ¶ 43, but this allegation appears to be merely a typographical error, because the cause of action is captioned as age discrimination in violation of the ADEA. *See id.* at Caption to Cause of Action C.

tion on April 5, 2001. The court heard oral arguments on Farner–Bocken's motion on May 16, 2001. Plaintiff Carol Richards was represented at the oral arguments on Farner–Bocken's motion for summary judgment by Scott L. Bandstra and Christopher Kragnes in Des Moines, Iowa. Defendant Farner–Bocken was represented by Jon C. Sogn of Lynn, Jackson, Schultz & Lebrun, P.C., in Sioux Falls, South Dakota, and Michael Giudicessi of Faegre & Benson, L.L.P., in Des Moines, Iowa. Farner–Bocken's motion for summary judgment is now fully submitted. Therefore, the court turns next to its legal analysis of the record in light of the contentions of the parties for and against summary judgment, beginning with an articulation of the applicable legal standards.

## II. LEGAL ANALYSIS

### A. Standards For Summary Judgment

This court has considered in some detail the standards applicable to motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure in a number of prior decisions. *See, e.g., Swanson v. Van Otterloo*, 993 F.Supp. 1224, 1230–31 (N.D.Iowa 1998); *Dirks v. J.C. Robinson Seed Co.*, 980 F.Supp. 1303, 1305–07 (N.D.Iowa 1997); *Laird v. Stilwill*, 969 F.Supp. 1167, 1172–74 (N.D.Iowa 1997); *Rural Water Sys. #1 v. City of Sioux Ctr.*, 967 F.Supp. 1483, 1499–1501 (N.D.Iowa 1997), *aff'd in pertinent part*, 202 F.3d 1035 (8th Cir.2000), *cert. denied*, —— U.S. ——, 121 S.Ct. 61, 148 L.Ed.2d 28 (2000); *Tralon Corp. v. Cedarapids, Inc.*, 966 F.Supp. 812, 817–18 (N.D.Iowa 1997), *aff'd*, 205 F.3d 1347 (8th Cir.2000) (Table op.); *Security State Bank v. Firstar Bank Milwaukee, N.A.*, 965 F.Supp. 1237, 1239–40 (N.D.Iowa 1997); *Lockhart v. Cedar Rapids Community Sch. Dist.*, 963 F.Supp. 805 (N.D.Iowa 1997). The essentials of these standards are as follows.

### 1. Requirements of Rule 56

Rule 56 itself provides, in pertinent part, as follows:

Rule 56. Summary Judgment

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

FED. R. CIV. P. 56(a)-(c) (emphasis added). Applying these standards, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir.1990). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman*, 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). As to whether a factual dispute is "material," the Supreme Court has explained, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rouse v. Benson*, 193 F.3d 936, 939 (8th Cir.1999); *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir.1995); *Hartnagel*, 953 F.2d at 394.

### 2. The parties' burdens

Procedurally, the moving party, here Farner–Bocken, bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Rose–Maston,* 133 F.3d at 1107; *Reed v. Woodruff County, Ark.,* 7 F.3d 808, 810 (8th Cir. 1993). "When a moving party has carried its burden under *Rule* 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Rather, the party opposing summary judgment, here Richards, is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Rabushka ex. rel. United States v. Crane Co.,* 122 F.3d 559, 562 (8th Cir.1997), *cert. denied,* 523 U.S. 1040, 118 S.Ct. 1336, 140 L.Ed.2d 498 (1998); *McLaughlin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 511 (8th Cir.1995); *Beyerbach,* 49 F.3d at 1325. If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548; *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.,* 113 F.3d 1484, 1492 (8th Cir.1997). In reviewing the record, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348; *Quick,* 90 F.3d at 1377 (same).

### 3. Summary judgment in employment cases

Because this is an employment discrimination and retaliation case, it is well to remember that the Eighth Circuit Court of Appeals has cautioned that "summary judgment should seldom be used in employment-discrimination cases." *Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir.1994) (citing *Johnson v. Minnesota Historical Soc'y,* 931 F.2d 1239, 1244 (8th Cir.1991); *Hillebrand v. M–Tron Indus., Inc.,* 827 F.2d 363, 364 (8th Cir.1987), *cert. denied,* 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989)); *see also Snow v. Ridgeview Medical Ctr.,* 128 F.3d 1201, 1205 (8th Cir.1997) (citing *Crawford*); *Helfter v. United Parcel Serv., Inc.,* 115 F.3d 613, 615 (8th Cir.1997) (quoting *Crawford*); *Chock v. Northwest Airlines, Inc.,* 113 F.3d 861, 862 (8th Cir.1997) ("We must also keep in mind, as our court has previously cautioned, that summary judgment should be used sparingly in employment discrimination cases," citing *Crawford*); *Smith v. St. Louis Univ.,* 109 F.3d 1261, 1264 (8th Cir.1997) (quoting *Crawford*); *Hardin v. Hussmann Corp.,* 45 F.3d 262 (8th Cir.1995) ("summary judgments should only be used sparingly in employment discrimination cases," citing *Haglof v. Northwest Rehabilitation, Inc.,* 910 F.2d 492, 495 (8th Cir.1990); *Hillebrand,* 827 F.2d at 364). Summary judgment is appropriate in employment discrimination cases only in "those rare instances where there is no dispute of fact and where there exists only one conclusion." *Johnson,* 931 F.2d at 1244; *see also Webb v. St. Louis Post–Dispatch,* 51 F.3d 147, 148 (8th Cir.1995) (quoting *Johnson,* 931 F.2d at 1244); *Crawford,* 37 F.3d at 1341 (quoting *Johnson,* 931 F.2d at 1244). To put it another way, "[b]ecause discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be

granted unless the evidence could not support any reasonable inference for the non-movant." *Crawford*, 37 F.3d at 1341 (holding that there was a genuine issue of material fact precluding summary judgment); *accord Snow*, 128 F.3d at 1205 ("Because discrimination cases often turn on inferences rather than on direct evidence, we are particularly deferential to the nonmovant," citing *Crawford* ); *Webb v. Garelick Mfg. Co.*, 94 F.3d 484, 486 (8th Cir.1996) (citing *Crawford*, 37 F.3d at 1341); *Wooten v. Farmland Foods*, 58 F.3d 382, 385 (8th Cir.1995) (quoting *Crawford*, 37 F.3d at 1341); *Johnson*, 931 F.2d at 1244.

■■■ However, not long ago, the Eighth Circuit Court of Appeals also observed that, "[a]lthough summary judgment should be used sparingly in the context of employment discrimination cases, *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994), the plaintiff's evidence must go beyond the establishment of a prima facie case to support a reasonable inference regarding the alleged illicit reason for the defendant's action." *Landon v. Northwest Airlines, Inc.*, 72 F.3d 620, 624 (8th Cir.1995) (citing *Reich v. Hoy Shoe Co.*, 32 F.3d 361, 365 (8th Cir.1994)); *accord Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1134 (8th Cir.) (observing that the burden-shifting framework of *McDonnell Douglas* must be used to determine whether summary judgment is appropriate), *cert. denied*, 528 U.S. 818, 120 S.Ct. 59, 145 L.Ed.2d 51 (1999). More recently, in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the Supreme Court reiterated that " '[t]he ultimate burden of

persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' " *Reeves*, 530 U.S. at 142, 120 S.Ct. 2097 (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).[3] Thus, what the plaintiff's evidence must show, to avoid summary judgment or judgment as a matter of law, is " '1, that the stated reasons were not the real reasons for [the plaintiff's] discharge; and 2, that age [or race, or sex, or other prohibited] discrimination was the real reason for [the plaintiff's] discharge." *Id.* at 153, 120 S.Ct. 2097 (quoting the district court's jury instructions as properly stating the law). The Supreme Court clarified in *Reeves* that, to meet this burden, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 148, 120 S.Ct. 2097 (emphasis added).

■ These special cautions seem to the court to be no less applicable here to Richards's federal- and state-law retaliation claims, because such claims also often depend upon inferences of the employer's motive, as is shown by application of the same burden-shifting analysis to retaliation claims as courts employ in discrimination cases. *See Moschetti v. Chicago, Central & Pacific R. Co.*, 119 F.3d 707, 709 (8th Cir.1997) ("The order and allocation of the burden of proof in [a retaliation case under 42 U.S.C. § 2000e–3(a) ]) is laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *accord Manning v. Metropolitan*

**3.** In *Reeves*, the Supreme Court was considering a motion for judgment as a matter of law *after* a jury trial, but the Supreme Court also reiterated that "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the

inquiry under each is the same.' " *Id.* at 150, 120 S.Ct. at 2110 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Therefore, the standards articulated in *Reeves* are applicable to the present motion for summary judgment.

*Life Ins. Co., Inc.,* 127 F.3d 686, 692 (8th Cir.1997); *Jackson v. Delta Special Sch. Dist. No. 2,* 86 F.3d 1489, 1494 (8th Cir. 1996)". Similarly, the Iowa Supreme Court has applied the burden-shifting analysis to common-law retaliation claims: The plaintiff must first establish a *prima facie* case of retaliatory discharge by showing protected activity, adverse employment action, and a causal connection between the two; the burden then shifts to the employer to state a legitimate reason for its action; finally, the plaintiff must demonstrate that the employer's reason is pretextual. *See, e.g., City of Hampton v. Iowa Civil Rights Comm'n,* 554 N.W.2d 532, 536 (Iowa 1996); *Yockey v. State,* 540 N.W.2d 418, 422 (Iowa 1995); *Hulme v. Barrett,* 449 N.W.2d 629, 633 (Iowa 1989) (*Hulme I* ).

With these standards in mind, the court turns to consideration of the specific grounds upon which Farner–Bocken seeks summary judgment on each of Richards's claims of discriminatory or retaliatory discharge. Analysis of these issues, however, begins with a determination of what claims are *not* at issue.

### B. Claims Not At Issue

#### 1. Gender discrimination

Although Richards pleaded gender discrimination in violation of federal and state law, *see* Complaint, Cause of Action A (gender discrimination in violation of Title VII) & Cause of Action D (gender discrimination in violation of Iowa Code § 216.1), the court finds that Richards does not oppose Farner–Bocken's motion for summary judgment on those claims. Specifically, in her resistance brief, Richards stated, "While Richards believes that she was treated differently than males at Defendant's business and she was replaced by males in the forklift position (Richards [Deposition] 58), she does not have sufficient evidence of said discrimination and would concede that her gender discrimina-

tion claim should be dismissed." Plaintiff's Brief in Resistance To Defendant's Motion For Summary Judgment (Plaintiff's Resistance Brief) at unnumbered pp. 9–10. Thus, Richards has not attempted to generate a genuine issue of material fact on her gender discrimination claims, and those claims are no longer at issue. *See Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548 (if a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law"); *In re TMJ Implants,* 113 F.3d at 1492 (same). Farner–Bocken will therefore be granted summary judgment on Richards's Cause of Action A and that part of Cause of Action D asserting gender discrimination in violation of Iowa Code Ch. 216.

#### 2. Retaliation claims

Moreover, the court finds that Richards has restricted her retaliation claims to a single state common-law claim of retaliatory discharge, in violation of public policy, for filing worker's compensation claims. As noted above, in her Complaint, Richards included allegations of retaliation in violation of Title VII, the ADEA, and Iowa Code § 216.1, in Causes of Action A, C, and D, respectively, and a common-law claim of retaliatory discharge in violation of public policy in Cause of Action E. The retaliation claim in Cause of Action E also includes an allegation that, after the retaliatory discharge, Farner–Bocken "employed younger people in the above-mentioned light duty position with similar qualifications," Complaint, Cause of Action E, ¶ 56, thus suggesting that Richards was attempting to assert a claim of retaliatory age discrimination in violation of public policy. However, the court finds that there is no explicit statement of a retaliation claim under the ADA in Cause of Action B, and the court does not read the

incorporation of prior paragraphs of the Complaint in that cause of action to be an attempt to assert a claim of retaliation in violation of the ADA. Thus, the court finds that Richards never asserted a claim of retaliation under the ADA or a common-law claim of retaliation premised on disability discrimination.

Farner–Bocken moved for summary judgment on the claims of retaliation under the federal statutes on the ground that Richards had not included any allegations of retaliation in either of her administrative charges, and therefore Richards could not include such claims in her present lawsuit. Richards concedes that she did not include retaliation claims in her administrative charge. *See* Defendant's Statement Of Material Facts, ¶ 23 (November 2, 1998, administrative charge "alleg[ed] discrimination based upon age, physical disability, and sex, but did not include [a] claim of retaliation") & ¶ 31 (the December 14, 1998, amended administrative charge alleged Richards "was laid off and was not being accommodated, but again did not allege any retaliation"); *and compare* Plaintiff's Response To Defendant's Statement Of Material Fact, ¶ 22 (admitting ¶ 23 of Defendant's Statement of Material Facts) & ¶ 30 (admitting ¶ 31 of Defendant's Statement of Material Facts). Farner–Bocken also moved for summary judgment on Richards's state common-law retaliation claim, on the ground that, to the extent that the common-law retaliation claim arises out of age, gender, or disability discrimination, it is preempted by Iowa Code Ch. 216. Richards does not disagree, but contends that Farner–Bocken has "misunderstood" her claim of discharge in violation of public policy, which is based on a claim that she was discharged, in violation of public policy, for filing worker's compensation claims, which she asserts is not preempted by the Iowa Civil Rights Act. In light of Richards's narrowing of her retaliation claims, Farner–Bocken contends, in its reply brief, that it is entitled, at a minimum, to summary judgment on retaliation claims in Causes of Action A, B, C, and D.

The court agrees with Farner–Bocken that Richards has not established that her retaliation claims under Title VII and the ADEA (or the ADA, if, contrary to the court's reading of the Complaint, Richards was attempting to assert such a retaliation claim) can proceed where such retaliation claims were not mentioned in Richards's administrative charges, and Richards does not argue to the contrary. *See Briley v. Carlin,* 172 F.3d 567, 573 (8th Cir.1999) (the district court properly granted summary judgment on certain federal discrimination claims where the plaintiff had failed to exhaust administrative remedies as to those claims); *McSherry v. Trans World Airlines, Inc.,* 81 F.3d 739, 740–41 (8th Cir.1996) ("Title VII requires an employee to file a 'charge' with the appropriate administrative agency within one hundred eighty days after the alleged unlawful employment practice occurs or be barred from filing a claim in district court based on the same occurrence. 42 U.S.C. § 2000e–5(e)."). Therefore, Farner–Bocken is entitled to summary judgment on any retaliation claims pursuant to the federal anti-discrimination statutes.

The court also agrees with the parties that Richards's state-law retaliation claims are "preempted" by Iowa Code § 216.1, except to the extent that Richards asserts a claim of retaliatory discharge for filing worker's compensation claims. As this court explained in *Westin v. Mercy Med. Servs., Inc.,* 994 F.Supp. 1050 (N.D.Iowa 1998),

> The ICRA, Iowa Code Chapter 216, established the Iowa Civil Rights Commission and provides statutory remedies for enforcement of basic civil rights. *Greenland v. Fairtron Corp.,* 500

N.W.2d 36, 37 (Iowa 1993). The Iowa Supreme Court has held that section 216.16(1) renders the chapter's remedies exclusive and preemptive. *Greenland,* 500 N.W.2d at 37; *Grahek v. Voluntary Hosp. Co-op. Ass'n of Iowa, Inc.,* 473 N.W.2d 31, 33 (Iowa 1991); *Northrup v. Farmland Indus., Inc.,* 372 N.W.2d 193, 197 (Iowa 1985). Preemption occurs unless the claims are separate and independent, and therefore incidental, causes of action. *Greenland,* 500 N.W.2d at 38; *Grahek,* 473 N.W.2d at 34; *Vaughn v. Ag Processing, Inc.,* 459 N.W.2d 627, 639 (Iowa 1990). The claims are not separate and independent when, under the facts of the case, success on the claim not brought under chapter 216 requires proof of discrimination. *Greenland,* 500 N.W.2d at 38.

*Westin,* 994 F.Supp. at 1056. Only Richards's claim of retaliation for filing worker's compensation claims is "separate and independent," because only on that claim is success independent of proof of discrimination. *Id.* Therefore, with that exception, Farner–Bocken is entitled to summary judgment on Richards's state-law retaliation claims as well.

### 3. Untimely claims

■ Farner–Bocken also contends that it is entitled to summary judgment on any of Richards's federal claims to the extent that such claims are based on conduct that occurred prior to January 5, 1998, and on any of her state-law claims to the extent that such claims are based on conduct that occurred prior to May 5, 1998, on the ground that such claims were not the subject of a timely administrative charge. Richards apparently concedes that her administrative charges were untimely as to any events that occurred before the dates specified, because she contends only that evidence of acts prior to the limitations period for filing administrative charges is nevertheless relevant evidence of discrimi-

natory conduct, even if the conduct in question is not itself actionable. The court agrees with Richards that such acts may constitute relevant evidence of discrimination, *see Delph v. Dr. Pepper Bottling Co. of Paragould, Inc.,* 130 F.3d 349, 356 (8th Cir.1997) ("The evidence of incidents before 1992 [*i.e.,* outside the limitations period for a timely administrative charge] . . . was relevant in resolving the ultimate question of whether the workplace at Dr. Pepper was so racially abusive and hostile that a reasonable employee would feel compelled to quit his job."), but the court also agrees with Farner–Bocken that no relief can be based on such conduct. *See Briley,* 172 F.3d at 573; *McSherry,* 81 F.3d at 740–41.

Therefore, Farner–Bocken is entitled to summary judgment on any portion of any of Richards's federal claims that is based on conduct that occurred prior to January 5, 1998, and on any portion of any of her state statutory claims that is based on conduct that occurred prior to May 5, 1998, on the ground that such claims were not the subject of a timely administrative charge. Evidence of such conduct is nevertheless relevant and likely admissible as evidence of discrimination.

■ The court turns next to the truly disputed claims at issue on Farner–Bocken's motion for summary judgment. In light of the foregoing analysis, those claims consist of claims of age and disability discrimination pursuant to state and federal statutes and a common-law claim of retaliatory discharge, in violation of public policy, for filing worker's compensation claims. In considering the discrimination claims, the court will generally make no distinction between claims based on federal law and comparable claims based on state law. This is appropriate, because the Iowa Supreme Court has recognized that federal precedent is applicable to discrimination

claims under the Iowa Civil Rights Act, Iowa Code Ch. 216. *See Fuller v. Iowa Dep't of Human Servs.*, 576 N.W.2d 324, 329 (Iowa 1998) (recognizing that Chapter 216's prohibition on disability discrimination is the state-law "counterpart" to the ADA, and that, "[i]n considering a disability discrimination claim brought under Iowa Code chapter 216, we look to the ADA and cases interpreting its language. We also consider the underlying federal regulations established by the Equal Employment Opportunity Commission (hereinafter 'EEOC'), the agency responsible for enforcing the ADA.") (internal citations omitted); *and compare Vivian v. Madison*, 601 N.W.2d 872, 873 (Iowa 1999) ("The ICRA was modeled after Title VII of the United States Civil Rights Act). Iowa courts therefore traditionally turn to federal law for guidance in evaluating the ICRA. *King v. Iowa Civil Rights Comm'n*, 334 N.W.2d 598, 601 (Iowa 1983). Federal law, however, is not controlling. We look simply to the analytical framework utilized by the federal courts in assessing federal law and not to a substitution of the language of the federal statutes for the clear words of the ICRA. *Hulme v. Barrett*, 449 N.W.2d 629, 631 (Iowa 1989)."; *Board of Supervisors of Buchanan County v. Iowa Civil Rights Comm'n*, 584 N.W.2d 252, 256 (Iowa 1998) ("In deciding gender discrimination disputes, we adhere to the Title VII analytical framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668, 677–79 (1973). *See Hy-Vee Food Stores, Inc. v. Iowa Civil Rights Comm'n*, 453 N.W.2d 512, 516 (Iowa 1990).").

### C. Age Discrimination

Farner–Bocken contends that Richards has failed to generate a genuine issue of material fact on an essential element of her *prima facie* case of age discrimination—her qualification for her position at Farner–Bocken—and that, in any event, she has failed to generate a genuine issue of material fact that her age was a motivating factor for the decision to end her employment. Rather, Farner–Bocken contends that Richards has produced no evidence undermining its legitimate reason for terminating her, the termination of her temporary position when she reached maximum medical improvement. Farner–Bocken contends further that allegedly age-based comments upon which Richards relies are merely "stray remarks" by non-decisionmakers.

Richards counters that, in *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the Supreme Court "held that no 'additional showing' was necessary beyond the prima facie case for a Plaintiff to prevail in a civil rights actio[n]." Plaintiff's Resistance Brief at 7. She contends further that she has established a prima facie case of age discrimination and has at least generated a genuine issue of material fact that Farner–Bocken's stated reasons for terminating her were false, where her position as hand stamper was not "eliminated," but has instead been filled by at least three younger women since her employment was terminated. She also argues that comments of co-workers suggest, or made her feel like, she was terminated because she was considered too old to continue working at Farner–Bocken, and that such evidence is relevant to a determination of age-based animus in her termination.

### 1. Reeves

The court finds that Richards has, perhaps inadvertently, overstated the holding in *Reeves*. In *Reeves*, the Supreme Court did *not* hold that the plaintiff's *prima facie* case, standing alone, was sufficient to prevail on a discrimination claim, as Richards

seems to suggest. Rather, the Court held, "It suffices to say that, because a prima facie case *and* sufficient evidence to reject the employer's explanation *may* permit a finding of liability, the Court of Appeals erred in proceeding from the premise that a plaintiff must always introduce additional, independent evidence of discrimination." *Reeves,* 530 U.S. at 149, 120 S.Ct. 2097 (emphasis added). Thus, no additional evidence of discrimination is necessarily required beyond the plaintiff's *prima facie* case *and* her evidence that the employer's proffered reason is pretextual. *See also Reeves,* 530 U.S. at 154, 120 S.Ct. 2097 (Ginsburg, J., concurring).[4] Not only is the plaintiff required to present evidence in support of *both* her *prima facie* case and her showing of pretext, even where such evidence is presented, there is no "bright-line" rule that the plaintiff prevails if she produces evidence in both categories. Rather, in *Reeves,* the Court stated the rule to be that "a plaintiff's prima facie

case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 148, 120 S.Ct. 2097 (emphasis added).

The Court explained this *permissive*—as opposed to *categorical*—rule further by identifying some of the circumstances in which it would *not* apply:

This is not to say that such a showing by the plaintiff will always be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the

---

4. Justice Ginsburg's concurrence clarifies this point:

The Court today holds that an employment discrimination plaintiff may survive judgment as a matter of law by submitting two categories of evidence: first, evidence establishing a "prima facie case," as that term is used in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); and second, evidence from which a rational factfinder could conclude that the employer's proffered explanation for its actions was false. Because the Court of Appeals in this case plainly, and erroneously, required the plaintiff to offer some evidence beyond those two categories, no broader holding is necessary to support reversal.

I write separately to note that it may be incumbent on the Court, in an appropriate case, to define more precisely the circumstances in which plaintiffs will be required to submit evidence beyond these two categories in order to survive a motion for judgment as a matter of law. I anticipate that such circumstances will be uncommon. As the Court notes, it is a principle of evidence law that the jury is entitled to treat a party's dishonesty

about a material fact as evidence of culpability. *Ante,* at 2108. Under this commonsense principle, evidence suggesting that a defendant accused of illegal discrimination has chosen to give a false explanation for its actions gives rise to a rational inference that the defendant could be masking its actual, illegal motivation. *Ibid.* Whether the defendant was in fact motivated by discrimination is of course for the finder of fact to decide; that is the lesson of *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). But the inference remains—unless it is conclusively demonstrated, by evidence the district court is required to credit on a motion for judgment as a matter of law, *see ante,* at 2110–2111, that discrimination could not have been the defendant's true motivation. If such conclusive demonstrations are (as I suspect) atypical, it follows that the ultimate question of liability ordinarily should not be taken from the jury once the plaintiff has introduced the two categories of evidence described above. Because the Court's opinion leaves room for such further elaboration in an appropriate case, I join it in full.
*Reeves,* 530 U.S. at 154, 120 S.Ct. 2097 (Ginsburg, J., concurring).

employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred. *See Aka v. Washington Hospital Center,* 156 F.3d [1284,] 1291–1292 [ (D.C.Cir.1998) (*en banc* ) ]; *see also Fisher v. Vassar College,* 114 F.3d [1332,] at 1338 [ (2d Cir. 1997) (*en banc* ) ] ("[I]f the circumstances show that the defendant gave the false explanation to conceal something other than discrimination, the inference of discrimination will be weak or nonexistent"). To hold otherwise would be effectively to insulate an entire category of employment discrimination cases from review under Rule 50, and we have reiterated that trial courts should not " 'treat discrimination differently from other ultimate questions of fact.' " *St. Mary's Honor Center [v. Hicks],* 509 U.S. [502,] 524, 113 S.Ct. 2742, 125 L.Ed.2d 407 [ (1993) ] (quoting *[U.S. Postal Service Bd. of Governors v.] Aikens,* 460 U.S. [711,] 716, 103 S.Ct. 1478, 75 L.Ed.2d 403 [ (1983) ] ).

Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law.

*Reeves,* 530 U.S. at 148–49, 120 S.Ct. 2097 (recognizing further that the Court "need not—and could not—resolve all of the circumstances in which such factors would entitle an employer to judgment as a matter of law"). The question in this case is whether, judged under these standards, Farner–Bocken is entitled to summary judgment on Richards's age discrimination claim.

### 2. *Richards's evidence*

The court assumes—as Farner–Bocken appears willing to do—that Richards has established or has generated a genuine issue of material fact on the elements of a *prima facie* case of age discrimination. *See Dammen v. UniMed Med. Ctr.,* 236 F.3d 978, 981 (8th Cir.2001) ("We will assume, as the district court did, that Dammen has met his burden of establishing a prima facie case by showing '(1) that he is within the protected age group; (2) that he met applicable job qualifications; (3) that he was discharged; and (4) that, after his discharge, the position remained open and the employer sought applicants with similar qualifications to fill the position.' ") (quoting *Bashara v. Black Hills Corp.,* 26 F.3d 820, 823 (8th Cir.1994)). Indeed, she is, and was at the pertinent time, within the protected age group, and she was discharged. *See id.* (first two elements of a *prima facie* case of age discrimination). Farner–Bocken suggests that Richards was not qualified, by reason of her disabilities, to perform a job available at Farner–Bocken, but defers that question for consideration in reference to Richards's disability discrimination claim, and the court will do the same. *Id.* (third element is "qualification"). Finally, as to the fourth element of her *prima facie* case, Richards has presented evidence that, after the discharge, three younger women performed her former job of hand stamper. *Id.* (fourth element is that the plaintiff was replaced by younger employees).

Farner–Bocken stands its ground, however, on its contentions that it has given a legitimate, non-discriminatory reason for terminating Richards—that Richards had reached maximum medical improvement and was not entitled to continue in a temporary, light-duty position created to facilitate her recovery—and that there is no evidence that age motivated the decision to

terminate her, even if Richards has a colorable claim that disability motivated Farner–Bocken's employment decision. The court concludes that Farner–Bocken is not entitled to summary judgment on either ground.

■ This is not the kind of case hypothesized in *Reeves* in which "no rational factfinder could conclude that [Farner–Bocken's] action was [age] discriminatory." *See Reeves,* 530 U.S. at 148, 120 S.Ct. 2097. First, the record *does not* "conclusively revea[l] some other, nondiscriminatory reason for the employer's decision." *Id.* Nor has Richards "created only a weak issue of fact as to whether the employer's reason was untrue and there [is not] abundant and uncontroverted independent evidence that no discrimination had occurred." *Id.* Instead, Richards has generated genuine issues of material fact right at the heart of the question of whether Farner–Bocken's reason for terminating her was non-discriminatory, by pointing to evidence that her position exclusively performing hand stamping was *not* temporary and Farner–Bocken's officer's representation that the position was being "eliminated" was not true. Specifically, Richards has pointed to evidence that supervisors would have considered her for permanent employment in the hand-stamping area; that "hand stamping" had a *separate* position description from "picking," albeit one neither Richards nor other employees in the area had ever seen prior to Richards's termination; and that hand stamping was an essential part of completion of orders in the cigarette area—even prior to Richards's assignment exclusively to that task—that had to be done by *someone;* and that Richards performed the hand-stamping job exclusively for several months. Moreover, Richards has pointed to evidence that, after she was terminated, several other people—all younger—continued to perform the hand-stamping job. It is for the jury to decide whether the way in which the hand-stamping job was performed before Richard performed it and after Richards was terminated was so entirely different from her exclusive performance of that task as to justify Farner–Bocken's assertions that Richards's performance of the task was only a temporary accommodation to allow her to recover from her ankle injury, not performance of a separate, permanent position.

Turning to the other factors identified by the Supreme Court in *Reeves* as relevant to evaluating whether an employer is entitled to judgment as a matter of law, *see id.* at 149, 120 S.Ct. 2097, the court cannot conclude that Richards's *prima facie* case or her proof of the falsity of Farner–Bocken's explanation is necessarily so weak that substantial additional evidence of discriminatory animus is required. *Id.* Although there are problems with Richards's *prima facie* case of age discrimination and her proof that Farner–Bocken's explanation is only pretextual, those problems are themselves the subject of jury questions that must be resolved in light of the totality of the circumstances. In short, the result here depends upon how a jury would weigh the evidence, something the court is not permitted to do on a motion for summary judgment. *Quick,* 90 F.3d at 1376–77 (the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial).

■ On the other hand, the court concludes that Richards's evidence of age discriminatory comments by co-workers, such has Helen Yager, are simply "stray remarks" that, while indicating an age-discriminatory animus *on the part of those employees,* are, under the circumstances of this case, of no probative value as to Far-

ner–Bocken's decision-making process. Richards has not shown that such comments were made by or to management personnel, and thus, they had no causal connection to Richards's discharge, nor did they even suggest a more general age-discriminatory animus on the part of management personnel that might still generate inferences that conduct towards Richards was age-based. The court reaches this conclusion, notwithstanding that both the Supreme Court and the Eighth Circuit Court of Appeals have cautioned that "stray remarks" should not always be entirely discounted in determining whether an age-discriminatory motivation has been shown.

For example, in *Reeves,* notwithstanding the Court's rule that the *prima facie* case plus pretext *may* permit a jury to find discrimination without additional, independent evidence, *see Reeves,* 530 U.S. at 149, 120 S.Ct. 2097, the Court itself considered "additional evidence," which in part, consisted of age-discriminatory comments of the plaintiff's supervisor. *Id.* at 151–52, 120 S.Ct. 2097. In *Reeves,* however, the Court took note of the supervisor's relationship to the plaintiff's discharge, *see id.,* while the comments in the present case were not made by a supervisory employee and have not been shown to have any other relationship to the decision-making process with regard to Richards. The Eighth Circuit Court of Appeals appears to be willing to go even further, suggesting in *Fisher v. Pharmacia & Upjohn,* 225 F.3d 915 (8th Cir.2000), that age-based remarks may be indicative of an age-discriminatory animus, even when they cannot be shown to be causally related to the decision-making process. The Eighth Circuit Court of Appeals explained,

> Although we agree that stray remarks, standing alone, may not give rise to an inference of discrimination, such remarks are not irrelevant. *See Ryther v. KARE 11,* 108 F.3d 832, 844 (8th Cir.

1997) (*en banc*). Rather, such comments are "surely the kind of fact which could cause a reasonable trier of fact to raise an eyebrow, thus providing additional threads of evidence that are relevant to the jury." *Bevan [v. Honeywell, Inc.],* 118 F.3d [603,] 610 [ (8th Cir. 1997) ] (citations and quotations omitted); *see Ryther,* 108 F.3d at 844. Stray remarks therefore constitute circumstantial evidence that, when considered together with other evidence, may give rise to a reasonable inference of age discrimination. *See Fast v. Southern Union Co., Inc.,* 149 F.3d 885, 891–92 (8th Cir.1998); *Bevan,* 118 F.3d at 610–11; *Madel v. FCI Marketing, Inc.,* 116 F.3d 1247, 1253 (8th Cir.1997). Thus, even assuming that the comments made by Reimer, Schwabauer, and Brewer were nothing more than stray remarks, we conclude that these statements, when considered in conjunction with Fisher's prima facie case and showing of pretext, give rise to an inference of intentional discrimination.

*Fisher,* 225 F.3d at 922–23. However, the makers of the "stray remarks" in *Fisher* were *management level employees,* not simply co-workers, so that the court can see how such comments might cause a reasonable fact finder "to raise an eyebrow," even if the comments were not shown to be causally related to the particular allegedly discriminatory decision at issue. *See id.* at 920 & 922 (Schwabauer was the director of the defendant's pork sales unit, who purportedly said he "wanted to bring some of the younger people along faster"); *id.* at 922 (Reimer was the vice-president of the defendant's animal health division, who purportedly said, "[w]e need to get rid of the old guys"); *id.* at 922 (Reimer was the plaintiff's supervisor in 1995, who occasionally referred to the plaintiff as "the old guy"). Such comments by management level employees as

were in the record in *Fisher* may suggest a pervasively age-discriminatory attitude to employment decisions that a reasonable jury could find was also reflected in the specific decision at issue. However, it is too big a step from recognizing inferences reasonably drawn in *Fisher*, concerning comments of management level employees that were *not* causally related to the discharge, to recognition of any age-based comment, even if made only by a co-worker with no demonstrated relationship to management decisions, as supportive of an inference of discriminatory motivation in the decision at issue. Thus, in the court's view, Yager's alleged comments add nothing to Richards's case.

Even so, the caution with which courts must approach summary judgment in discrimination cases, which depend upon the inferences to be drawn from circumstantial evidence, counsels against granting summary judgment on Richards's age discrimination claim, although this claim is fraught with certain problems. *See Crawford,* 37 F.3d at 1341 ("Because discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant."); *see also Snow,* 128 F.3d at 1205; *Webb v. Garelick Mfg. Co.,* 94 F.3d at 486; *Wooten,* 58 F.3d at 385; *Webb v. St. Louis Post–Dispatch,* 51 F.3d at 148; *Johnson,* 931 F.2d at 1244. Instead, the court finds that the record presented generates genuine issues of material fact sufficient to leave to the jury the question of whether Richards has met her " 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against [her].' " *Reeves,* 530 U.S. at 142, 120 S.Ct. 2097 (quoting *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089). Farner–Bocken's motion for summary judgment on Richards's age discrimination claim will therefore be denied.

### D. Disability Discrimination

Analysis of Richards's disability discrimination claim is somewhat more complicated. Farner–Bocken's primary contention is that Richards's job running the hand-stamping iron was a temporary, light-duty job created just for her while she was healing from her ankle surgery, and that an employer does not violate the ADA when it limits access to light-duty programs to employees with only temporary disabilities. Moreover, Farner–Bocken contends that the ADA does not compel an employer to convert any temporary jobs to permanent positions for its disabled workers, even under the guise of "reasonable accommodation." Finally, Farner–Bocken contends that Richards admitted that she was unable to fulfill the essential functions of a "picker" position, either with or without accommodation. In such circumstances, Farner–Bocken contends that it is entitled to summary judgment on Richards's state and federal disability discrimination claims.

Richards, however, argues that she has generated genuine issues of material fact as to whether or not she could perform the job of "C-store picker," either with or without reasonable accommodation, and that it is undisputed that she could have performed the job of "hand stamper," as a separate, self-contained position. She also contends that she has generated genuine issues of material fact as to whether the position of hand stamper was or was not a separate, permanent position, not merely a temporary position that was normally part of the combined duties of hand stamping and picking required of all employees in the part of the cigarette area where cigarette packages requiring hand stamping were "picked" and "stamped." Even if the tasks of hand stamping and picking were necessarily combined into a single position, Richards contends that evidence from a

vocational rehabilitation expert demonstrates that reasonable accommodations for her disabilities were possible, but that Farner–Bocken never properly used an interactive process to determine what accommodations were reasonably available.

### 1. The pertinent position

 The court finds that Farner–Bocken has correctly stated the elements of Richards's *prima facie* case of disability discrimination. *See Taylor v. Nimock's Oil Co.,* 214 F.3d 957, 959–60 (8th Cir. 2000) ("To establish a prima facie case of discrimination, [the plaintiff] must show (1) that she had a disability within the meaning of the ADA, (2) that she was qualified to perform the essential functions of her job, with or without reasonable accommodation, and (3) that she suffered an adverse employment action because of her disability. *See Kiel v. Select Artificials, Inc.,* 169 F.3d 1131, 1135 (8th Cir.1999) (*en banc* ).". The court also agrees that a key element of any disability discrimination claim is that the employee must be qualified for the position in question, either with or without reasonable accommodation, *see id.* (second element), and that "qualification" turns upon the employee's ability to perform the "essential functions" of the job in question, either with or without reasonable accommodation. *Heaser v. Toro Co.,* 247 F.3d 826, 830 (8th Cir.2001) ("To be a qualified individual within the meaning of the ADA, [the plaintiff] must (1) possess the requisite skill, education, experience, and training for her position; and (2) be able to perform the essential job functions, with or without reasonable accommodation. *Moritz v. Frontier Airlines, Inc.,* 147 F.3d 784, 786–87 (8th Cir. 1998).". As the Eighth Circuit Court of Appeals recently explained, "Although an ADA plaintiff retains the ultimate burden of proving that she is a qualified individual, an employer who disputes the plaintiff's claim that she can perform the essential functions of a job must put forth evidence establishing those functions." *Id.* (citing *Benson v. Northwest Airlines, Inc.,* 62 F.3d 1108, 1113 (8th Cir.1995)).

As the movant, Farner–Bocken also bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548); *see also Rose–Maston,* 133 F.3d at 1107; *Reed,* 7 F.3d at 810. Farner–Bocken has attempted to meet this initial burden by asserting that the job in question is Richards's original position as a "C-store picker," and that Richards herself has admitted in deposition that she cannot perform the essential functions of such a position. Moreover, Farner–Bocken contends, on the basis of testimony of officers of the company, that "hand stamping" was not a separate position, but only part of the job of "pickers" in the "hand-stamping" part of the cigarette area, so that, if Richards cannot perform the essential functions of a picker position, she necessarily cannot perform the essential functions of the combined hand stamper/picker position in the "hand-stamping" part of the cigarette area.

 However, the court finds that Richards has generated a genuine issue of material fact as to just what position she had to be qualified for, and hence just what qualifications were required. Richards has met her burden on summary judgment to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial" as to what position is in question. FED. R. CIV. P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Rabushka,* 122 F.3d at 562; *McLaughlin,* 50 F.3d at 511; *Beyerbach,*

49 F.3d at 1325. Nevertheless, in this regard, the court finds more equivocation in the evidence than Richards does concerning whether or not hand stamping was a temporary position and whether, in the ordinary course, hand stamping was a task forming only part of the essential duties of employees in the cigarette area, not a separate position.

Specifically, Richards has pointed, first, to evidence generating a genuine issue of material fact as to whether or not she was temporarily assigned to the cigarette area, because other employees, including Deborah Toyne and Geana Simpson, were hired for permanent positions in the hand-stamping area. This evidence does give rise to a reasonable inference that jobs in the "hand-stamping" part of the cigarette area were "permanent," not simply "temporary," and thus this evidence suggests that the appropriate job for which Richards must show she was "qualified" was in the hand-stamping area. Indeed, Toyne testified in deposition that she was hired for a permanent position in the cigarette area, although she describes that position as "cigarette picker." Toyne Deposition, 5. Toyne also confirms Richards's contention that Farner–Bocken "had trouble finding anyone that would do that job" in the cigarette department. *Id.* at 22–23.

However, Toyne's deposition testimony does not support Richards's contention that "hand stamping" was a separate position that did not involve any "picking." Rather, Toyne testified that, after Farner–Bocken moved its operations to the new warehouse, "I was a cigarette picker, and then I started hand-stamping cigarettes. And that was just a month or two after we were there. *In hand-stamping, you have to pick the orders and then you stamp them.*" Toyne Deposition at 6–7 (emphasis added). This testimony, of course, supports Farner–Bocken's contention that persons assigned to "hand stamping" nor-mally had to perform the tasks of both "picking" and "stamping."

Equally uncertain is some of Richards's other evidence that, contrary to the position of Farner–Bocken officials at the time she was terminated, the position involving hand stamping only, without any "picker" duties, was not "temporary." In this regard, Richards stated in deposition that the Night Operations Manager, Chuck Perrin, told her in August of 1998, that he wanted to place Richards "permanently" in the position where she would "hand stamp" exclusively, because of her ankle problems. Perrin himself confirmed, in his own deposition, that he "would work to get her in that department" on a permanent basis, although the implication concerning the precise position involved in such permanent employment is more equivocal than Richards suggests, because Perrin conditioned that statement on when Richards "could ... come back to full duty." Perrin Deposition at 37, *ll.* 21–24. Perrin attempted to clarify this statement as follows:

A. Well, we were making accommodations and things to help her through her injury, that the talk of making it a permanent position was in regards to her coming back in full capacity and that I would—and one of the things that I could do is to try to help her get into that department permanently.

Perrin Deposition at 38, *ll.* 1–6. It is not entirely clear from this testimony whether Perrin was suggesting that he would pursue permanent assignment for Richards to a position involving only hand stamping, without any "picker" duties, as an accommodation if Richards *could not* come back "in full capacity," or whether his interest in placing Richards in that position permanently was contingent upon her returning to work "in full capacity." Granting Richards all reasonable inferences, however,

the court must read the statement, at least for purposes of Farner–Bocken's summary judgment motion, as suggesting that Perrin would consider Richards's employment as a hand stamper only, without "picker" duties, as a reasonable accommodation on a permanent basis. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348 (in reviewing the record, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts); *Quick*, 90 F.3d at 1377 (same).

Similarly, the testimony of Julie Pohar, Richards's direct supervisor, indicates that Pohar agreed to the statement that she "would have hired [Richards] as a permanent employee in that cigarette area," but Pohar added, "[p]rovided she could do all those hand-stamp requirements." Julie Pohar Deposition at p. 106, *l*. 20, to p. 107, *l*. 2. Pohar had previously testified, "We never had anyone who just hand-stamped, but now we've changed it where it's a rotation thing by each wave." Julie Pohar Deposition at p. 104, *ll*. 6–8. Thus, Pohar's testimony is not supportive of all of the inferences Richards hopes to generate.

On the other hand, Richards also points to the affidavit of Deborah Gustoff, a former Farner–Bocken employee, in which Gustoff avers, "During the entire time that I was a cigarette picker, the cigarette picker and the hand stamper were two separate and distinct positions," and "[p]eople who picked cigarettes only picked cigarettes and hand stampers only stamped cigarettes." Gustoff Affidavit at ¶¶ 7–8. This evidence unequivocally identifies hand-stamping, without picking duties, as a separate position. Therefore, it is sufficient to generate a factual dispute as to the existence of a position involving only hand stamping, without any picking duties.

Therefore, the court concludes that there are genuine issues of material fact

concerning precisely what position Richards must show she was "qualified" to perform.

### 2. *Essential functions*

Because there are genuine issues of material fact as to whether the pertinent job is the exclusive performance of "hand-stamping" tasks, not involving any "picker" duties, or whether the pertinent job is the more demanding position combining duties of picking and hand stamping, or the still more demanding position Richards originally filled as a "C-store picker," the court must also consider whether there are genuine issues of material fact as to whether or not Richards could perform the "essential functions" of each—or any—of these jobs. Farner–Bocken contends that Richards has admitted she could not, even with accommodation, perform all of the essential functions of a "picker" position or any job requiring "picker" functions. Richards contends that there are genuine issues of material fact that she could have performed each of the pertinent jobs, either with or without reasonable accommodations.

 As the Eighth Circuit Court of Appeals recently explained in *Heaser v. Toro Co.*, 247 F.3d 826 (8th Cir.2001),

> An essential function may be established by evidence that includes:
>
> (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; and (5) the current work experience of incumbents in similar jobs.

*Moritz*, 147 F.3d at 787 (internal quotation marks omitted).

*Heaser*, 247 F.3d at 826, 830–31.

As to the first factor, the Farner–Bocken officials who terminated Richards plainly considered that the essential functions of the "hand-stamping" position combined stamping and picker duties, and that Richards's assignment to a position involving only "stamping" duties was a temporary, light duty position. *See id.* Moreover, Julie Pohar testified, "We never had anyone who just hand-stamped, but now we've changed it where it's a rotation thing by each wave," Julie Pohar Deposition at p. 104, *ll.* 6–7, which suggests, on the basis of the third and fifth factors, that combined duties were essential functions. Moreover, Julie Pohar testified that there were problems at the end of the shift with any person who was restricted exclusively to "stamping" duties, because such a person would not be able "to go to another area to help" if another area had fallen behind. *See id.* at p. 105, *l.* 18, to p. 106, *l.* 1. Thus, the fourth factor would also seem to suggest that "combined" duties were essential functions of any job in the cigarette area. Balanced against this is Richards's evidence, as to the second factor identified in *Heaser*, that "hand stamping" was described in a *separate* written job description. Also, as to third and fifth factors, Richards points to the affidavit of Deborah Gustoff, a former Farner–Bocken employee, stating, "During the entire time that I was a cigarette picker, the cigarette picker and the hand stamper were two separate and distinct positions," and "[p]eople who picked cigarettes only picked cigarettes and hand stampers only stamped cigarettes." Gustoff Affidavit at ¶¶ 7–8. Thus, in light of this conflicting evidence reasonably supporting the inference that combined duties of stamping and picking were not essential functions of every job in the cigarette area, the court must draw that reasonable inference in Richards's fa-

vor. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348; *Quick*, 90 F.3d at 1377.

The parties do not appear to dispute what constituted the essential functions of a "C-store picker" position, but instead contest whether any reasonable accommodation was available that would have allowed Richards to perform those essential functions. Therefore, the court turns next to the "reasonable accommodation" part of the analysis.

### 3. *Reasonable accommodation*

 Assuming that "picker" duties are required in the cigarette area or that the proper job for analysis of Richards's qualifications is "C–Store picker," the question is whether Richards could be accommodated in "picker" positions. As the Eighth Circuit Court of Appeals recently explained in *Heaser*,

> A plaintiff need only make a facial showing that a reasonable accommodation that would· enable her to perform her essential job functions is possible. *Fjellestad v. Pizza Hut of America, Inc.*, 188 F.3d 944, 950 (8th Cir.1999). The burden then shifts to the employer to show that it is unable to accommodate the plaintiff. *Id.*

Under the ADA, reasonable accommodations may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies...." 42 U.S.C. § 12111(9). "This does not mean an employer is required to offer those accommodations in every case." *Treanor v. MCI Telecomm. Corp.*, 200 F.3d 570, 575 (8th Cir.2000). Job restructuring is a possible accommodation, but an employer is not required to reallocate es-

sential functions of the employee's job. *Id.; Benson,* 62 F.3d at 1112–13.

*Heaser,* 247 F.3d at 831.

### a. The "C-store picker" position

Farner–Bocken asserts that Richards acknowledged that she could not perform the essential functions of a "C-store picker," either with or without reasonable accommodation. Specifically, Farner–Bocken points to the following from Richards's deposition:

Q. Would you be able to do the picker job with your current limitations?

A. No.

Q. Would there be any kind of accommodations that Farner–Bocken would be able to do that would allow you to do that picker job?

A. No.

Richards Deposition at p. 164, *l.* 22, to p. 165, *l.* 3. This deposition testimony, given on October 19, 2000, would, at least at first blush, seem to end the matter, establishing beyond dispute that Richards could not perform the essential functions of the "C-store picker" position, either with or without reasonable accommodation.

However, in her brief in support of her resistance to summary judgment, Richards appears to assert a completely contrary position, stating, "Richards with or without accommodations could have performed either the position that she was began [sic] for Defendant as a C-store picker that required her [to] pull different product to be placed into orders for convenience stores to working [sic]." Plaintiff's Resistance Brief at (unnumbered) p. 17. This rather confusing argument is all that is offered in Richards's brief. Only slightly more is offered in support of Richards's contentions regarding the "C-store picker" position in her response to Farner–Bocken's statement of undisputed facts. In its statement of material facts, Farner–Bocken stated, "Richards admits she is unable to do the 'picker' job with her current limitations and there are no accommodations that would allow her to do so," citing Richards's deposition testimony, as quoted above. Defendant's Statement Of Material Facts In Support Of Motion For Summary Judgment, ¶ 36. In response, Richards states the following:

Richards clarifies [Defendant's Statement Of Material Facts] paragraph 36. She does acknowledge that she testified in her deposition that she could not perform the picker position with her current limitations. However, her affidavit (P's Appx. 6–7 Richards' [sic] affidavit) and vocational rehabilitation expert's, Kent Jayne's, report (P's Appx. 30–31 Kent Jayne's vocational report) clearly evidence that Richards could perform the "picker position" and/or the "hand stamping position" with or without accommodations.

Plaintiff's Response To Defendant's Statement Of Material Fact And Plaintiff's Statement Of Additional Material Facts That Preclude Summary Judgment, ¶ 35. The portion of Richards's affidavit, given on some unspecified day in March of 2001, concerning the "C-store picker" position states the following:

I could perform the C-store picker responsibilities with or without accommodations. *Currently,* I am on and off my feet frequently. There is no reason why I could not *now* walk a cart down the aisle and pull products. Furthermore, if Farner–Bocken would accommodate me by allowing me to use a motorized cart that it uses in [the] "case pick" department, I could [do] my job.

Plaintiff's LR 56.1(e) Appendix Resisting Defendant's Motion For Summary Judgment at 6 (Exhibit 2, Richards's Affidavit, ¶ 24) (emphasis added). Although Richards "acknowledges" her prior deposition testimony, Richards's affidavit appears to

be inconsistent with—indeed, contrary to—her prior deposition testimony that she *could not* perform the "picker" job, either with or without reasonable accommodation.

■ As the Eighth Circuit Court of Appeals recently explained, ˙

It is well-settled that "[p]arties to a motion for summary judgment cannot create sham issues of fact in an effort to defeat summary judgment." *American Airlines, Inc. v. KLM Royal Dutch Airlines, Inc.,* 114 F.3d 108, 111 (8th Cir. 1997). Consequently,

a party should not be allowed to create issues of credibility by contradicting his own earlier testimony. Ambiguities and even conflicts in a deponent's testimony are generally matters for the jury to sort out, but a district court may grant summary judgment where a party's sudden and unexplained revision of testimony creates an issue of fact where none existed before. Otherwise, any party could head off a summary judgment motion by supplanting previous depositions ad hoc with a new affidavit, and no case would ever be appropriate for summary judgment.

*Wilson v. Westinghouse Elec. Corp.,* 838 F.2d 286, 289 (8th Cir.1988) (internal citations and quotation marks omitted).

*Bass v. City of Sioux Falls,* 232 F.3d 615, 618 (8th Cir.1999). The court has considerable experience with this issue:

This court has with some frequency considered the question of whether eleventh-hour affidavits that contradict deposition testimony can generate a genuine issue of material fact precluding summary judgment. *See Loeckle v. State Farm Automobile Ins. Co.,* 59 F.Supp.2d 838, 856–58 (N.D.Iowa 1999) (holding that plaintiff's affidavit failed to fall within the exception stated in [*Camfield Tires, Inc. v. Michelin Tire Corp.,*

719 F.2d 1361 (8th Cir.1983),] that an affidavit contradicting the prior deposition testimony of the affiant but containing an adequate explanation for the disparity may create a genuine issue of fact because plaintiff's deposition testimony was so contradictory from the statements contained in her affidavit); *Longstreth v. Copple,* C97–4100–MWB, slip op. at 18–22 (N.D.Iowa May 6, 1999) (holding that the court could not conclude that the plaintiff's deposition testimony was so contradictory of the statements contained in plaintiff's affidavit as to foreclose the affidavit's use for summary judgment purposes); *Waitek v. Dalkon Shield Claimants Trust,* 908 F.Supp. 672, 684–686 (N.D.Iowa 1995) (holding that the affidavit of an expert proffered in opposition to summary judgment motion was assertedly in conflict with the expert's prior deposition testimony, but the court found that the affidavit could generate genuine issues of material fact, because the expert explained the basis for his apparently changed opinion); *Kunzman v. Enron Corp.,* 902 F.Supp. 882, 896–98 (N.D.Iowa 1995) (holding that affidavits of two former co-workers would be considered and allowed to create a genuine or substantial factual issue, even though the plaintiff stated in his deposition that he was unaware of the co-workers' knowledge, where the co-workers' affidavits specifically referred to a statement made in their presence and which the defendants had not challenged in any manner); *Rowson v. Kawasaki Heavy Indus., Ltd.,* 866 F.Supp. 1221, 1229–31 (N.D.Iowa 1994) (holding that a belated affidavit could be considered where the affiant's memory was recently refreshed by photographs that he had not been shown during the deposition); *see also Laird v. Stilwill,* 969 F.Supp. 1167, 1173 (N.D.Iowa 1997) (noting the

general rule that an affidavit that is in direct contradiction of or inherently conflicts with the affiant's prior deposition testimony fails to raise an issue of material fact). The general rule cited in these decisions, based on the holding of the Eighth Circuit Court of Appeals in *Camfield Tires, Inc. v. Michelin Tire Corp.,* 719 F.2d 1361 (8th Cir.1983), is that an affidavit that is in direct contradiction of or inherently conflicts with prior deposition testimony by the affiant does not raise an issue of material fact, although an exception to the rule may be shown where the affiant explains apparent inconsistencies or demonstrates a plausible reason for a change. *See also Herring v. Canada Life Assurance Co.,* 207 F.3d 1026 (8th Cir.2000) (citing and applying the rule in *Camfield* ); *Schiernbeck v. Davis,* 143 F.3d 434, 436–39 (8th Cir.1998) (same); *American Airlines, Inc. v. KLM Royal Dutch Airlines, Inc.,* 114 F.3d 108, 111–12 (8th Cir.1997) (same). The court will therefore scrutinize [the proffered] affidavit to determine if it presents a plausible explanation for its discrepancies with [the affiant's] prior testimony or other factors justifying an exception to the rule stated in *Camfield* and whether the affidavit generates a genuine issue of material fact precluding partial summary judgment.

*Hog Slat, Inc. v. Ebert,* 104 F.Supp.2d 1112, 1117–18 (N.D.Iowa 2000).

Richards's turnabout on the issue of her ability to perform the "C-store picker" position is both sudden and not explicitly explained. *See Bass,* 232 F.3d at 618. At oral arguments, her attorney offered as justifications for the change that Richards was "confused" during her deposition. First, Richards's affidavit does not declare that she was "confused" during her deposition; it only "acknowledges" that her prior deposition testimony was different. *See Loeckle,* 59 F.Supp.2d at 857 (noting that, while counsel offered as an explanation for an inconsistent affidavit by the plaintiff that she was "confused" at the time of her deposition, the explanation was not plausible, because the plaintiff did not declare that she had been confused in her affidavit, and indeed, her affidavit made no mention of the prior inconsistent statements in her deposition testimony). Second, the court finds nothing inherently confusing about the questions put to Richards during her deposition concerning her ability to perform the "picking" job and no indication of confusion or equivocation in Richards's response. *Compare id.; see also Ebert,* 104 F.Supp.2d at 1118–19 (concluding that such confusion was evident from contradictory answers in different parts of the same deposition). Moreover, Richards failed to exercise her right to examine and correct her deposition testimony, which suggests that she was not confused at the time. Similarly, counsel represented that, shortly before her deposition, Richards had lost her husband, and so her deposition testimony may not have been entirely clear-headed. Again, there is no such declaration in Richards's affidavit explaining differences between the affidavit and deposition.

However, the court ultimately concludes that the affidavit is not so much "inconsistent" or "contradictory," as simply unhelpful. One inference to be drawn from Richards's affidavit, based on the words italicized in the quoted portion above, could be that the affidavit is not necessarily inconsistent with Richards's deposition testimony, because *now* she can perform the functions of the job, that is, more than two years after her discharge, although, at the time of her deposition, six months earlier, and at the time of her termination, she could not. Even assuming, however, that Richards's affidavit is not in fact inconsistent with her deposition

testimony, on the ground that the apparently contradictory statements refer to different time periods, and thus is not subject to exclusion under the *Camfield* rule, the difference fails to generate a genuine issue of material fact that would preclude summary judgment, because it generates no inference *that Richards could perform the essential functions of the "C-store picker" position at the time of the allegedly discriminatory conduct.* Thus, it does nothing to establish a genuine issue of material fact that Richards was "qualified" for the "C-store picker" position *at the time she was terminated. See, e.g., Moore v. Payless Shoe Source, Inc.,* 187 F.3d 845, 847 (8th Cir.) ("To avoid summary judgment dismissing her ADA claim, [the plaintiff] must show that *at the time in question* she was disabled but was nonetheless qualified to perform the essential functions of her job with or without reasonable accommodation. *See* 42 U.S.C. § 12111(8).") (emphasis added), *cert. denied,* 528 U.S. 1050, 120 S.Ct. 589, 145 L.Ed.2d 490 (1999); *Browning v. Liberty Mut. Ins. Co.,* 178 F.3d 1043, 1047 (8th Cir.) ("[W]e find that [the plaintiff] failed to establish that she was a qualified individual under the ADA *at the time of her termination.* Under the ADA, a qualified individual is an individual who, 'with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds.' 42 U.S.C. § 12111(8). The determination of whether an individual is qualified for purposes of the ADA … *should be made as of the time of the employment decision. See* 29 C.F.R § 1630.2(m) App.") (emphasis added), *cert. denied,* 528 U.S. 1050, 120 S.Ct. 588, 145 L.Ed.2d 489 (1999). Richards's affidavit, even if can be properly considered by the court, does not generate a genuine issue of material fact on the pertinent issue.

Moreover, the cited portion of the vocational rehabilitation expert's report says nothing whatever about accommodations available *concerning the "C-store picker" position,* in light of either Richards's present condition or her condition at the time of her discharge. Rather, it addresses only "accommodations [that] would allow Ms. Richards to perform the job of *cigarette hand stamper or picker.*" Plaintiff's Appendix at 30 (Exhibit 8, Preliminary Vocational Economic Analysis at 4) (emphasis added). Thus, the expert's observations also fail to generate a genuine issue of material fact concerning Richards's qualification to perform her former job as a "C-store picker" at the time of the allegedly discriminatory conduct. *See Moore,* 187 F.3d at 847; *Browning,* 178 F.3d at 1047.

Thus, Richards does not identify any evidence supporting what appears to be a contention that she *could* perform all of the essential functions of a "C-store picker" position *at the time she was discharged.* The court must therefore conclude that Richards has failed to generate a genuine issue of material fact that she could be accommodated in, and hence was "qualified" for, the "C-store picker" position at the relevant time. Consequently, Farner–Bocken is entitled to summary judgment on Richards's disability discrimination claim to the extent that Richards asserts that she was improperly discharged from or was not accommodated in a "C-store picker" position. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548 (if a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law"); *In re TMJ Implants Litig.,* 113 F.3d at 1492.

#### b. The cigarette stamper and picker position(s)

On the other hand, Richards has generated a genuine issue of material fact that

she could be reasonably accommodated in the combined duties of stamping and picking in the cigarette area, even assuming the duties of "cigarette hand stamping" and "cigarette picking" do not define separate positions. That genuine issue of material fact arises from the Preliminary Vocational Economic Analysis of Kent Jayne, a vocational rehabilitation expert. Plaintiff's Appendix, 30–31. In his analysis, the vocational rehabilitation expert identifies as a reasonable accommodation "[a]lternating the job of picker and hand stamper on occasion during the shift," which matches Farner–Bocken's conception of the essential duties of a person in the cigarette hand-stamping area *at the time of Richards's discharge. Id.* at 30. This alone would not generate a genuine issue of material fact as to Farner–Bocken's ability to accommodate Richards's disability if Richard could not perform the duties of a picker in the cigarette area at the relevant time. However, the vocational rehabilitation expert specifies further a number of ways in which Richards could also be accommodated in "picker" functions, including modifications to equipment to eliminate nearly all of the lifting of totes, which was outside of Richards's lifting restrictions at the time of her discharge, because of her shoulder injury. *Id.* at 30–31. The vocational rehabilitation expert opines further that all of the equipment modifications proposed are "readily available and 'off-the-shelf.'" *Id.* at 31. Consequently, the vocational rehabilitation expert's proposal of alternation of "picking" and "stamping" duties and proposals for modifications to the way in which "picking" duties are performed generate a genuine issue of material fact as to whether Richards's ankle and shoulder disabilities, as they existed at the time of her termination, could have been reasonably accommodated.

Moreover, the record does not indicate in what way Farner–Bocken ever engaged in a proper "interactive process" to determine what accommodations were reasonable, once Farner–Bocken officials decided that Richards should not be allowed to continue in a "light duty" position involving only hand-stamping duties, without picking duties. A jury could reasonably infer that Farner–Bocken acted in a peremptory manner in terminating Richards as soon as it had settled her first worker's compensation claim, and such failure to engage in an interactive process is itself evidence of disability discrimination. *See Fjellestad,* 188 F.3d at 952.

Therefore, except as otherwise indicated, Farner–Bocken is not entitled to summary judgment on Richards's disability discrimination claim.

### E. Wrongful Discharge

Next, the court turns to Farner–Bocken's contention that it is entitled to summary judgment on Richards's remaining claim of wrongful discharge in violation of public policy, which, as explained above, is a claim that Richards was discharged for filing worker's compensation claims. Farner–Bocken contends that there is no evidence that the decision to end Richards's light-duty assignment or her employment was in retaliation for filing a worker's compensation claim. Farner–Bocken contends that the only evidence of the grounds for Richards's termination is that Richards's was removed from "temporary, light-duty" because she had reached maximum medical improvement, and the only reason her employment ended was that she could not perform the essential functions of her regular employment as a "picker."

Richards, however, contends that she has established, or has generated a genuine issue of material fact as to, a causal connection between her filing of worker's compensation claims and her discharge by showing that she was discharged within days after she settled her first worker's compensation claim with Farner–Bocken

and less than a month after she filed her second claim, which concerned her shoulder injury. Moreover, she contends that there is a smell of pretext surrounding Farner–Bocken's reason for terminating her, because she has proffered evidence that her job in the cigarette area was not "temporary, light-duty" and was not "eliminated." Finally, she contends that Farner–Bocken's Chief Financial Officer acknowledged that the worker's compensation claims were a factor in his decision to terminate Richards.

■ As noted above, the Iowa Supreme Court has explained that a common-law claim of retaliation is also subject to a burden-shifting analysis: The plaintiff must establish a *prima facie* case of retaliatory discharge by showing protected activity, adverse employment action, and a causal connection between the two; the burden then shifts to the employer to state a legitimate reason for its action; and finally, the plaintiff must demonstrate that the employer's reason is pretextual. *See, e.g., City of Hampton,* 554 N.W.2d at 536; *Yockey,* 540 N.W.2d at 422; *Hulme I,* 449 N.W.2d at 633. The court agrees with Richards that there are genuine issues of material fact at each stage of this analysis.

■ Richards's filing of her worker's compensation claims is clearly activity protected by public policy. *See Springer v. Weeks & Leo Co.,* 429 N.W.2d 558, 560 (Iowa 1988); *see also Smith v. Smithway Motor Xpress, Inc.,* 464 N.W.2d 682, 686 (Iowa 1990); *Niblo v. Parr Mfg., Inc.,* 445 N.W.2d 351, 353 (Iowa 1989). Richards has also shown adverse employment action following so closely on the heels of protected activity that she has established a *prima facie* causal connection between the protected activity and the adverse conduct. *See, e.g., Webner v. Titan Distrib., Inc.,* 101 F.Supp.2d 1215, 1230 (N.D.Iowa 2000) (five days between protected activity and adverse action was sufficient to establish a

causal connection for purposes of a *prima facie* case of wrongful discharge); *Hansen v. Sioux By–Products,* 988 F.Supp. 1255, 1257–58 (N.D.Iowa 1997) (termination the same day that the plaintiff was injured at work and reported the injury satisfied the requirements of the *prima facie* case).

However, proof that adverse employment action occurred after protected employee conduct, without more, is insufficient to generate a fact question on the third-stage issue of whether the filing of a worker's compensation claim was a determining factor in the employee's discharge. *Phipps v. IASD Health Servs. Corp.,* 558 N.W.2d 198, 203 (Iowa 1997) (citing *Hulme v. Barrett,* 480 N.W.2d 40, 43 (Iowa 1992) (*Hulme II* )). Richards contends that there is more in her case to satisfy or generate genuine issues of material fact at the latter stages of the analysis.

Richards relies on deposition testimony by Farner–Bocken's Chief Financial Officer, which she characterizes as an acknowledgment that the settlement of Richards's worker's compensation claim was a factor in her termination. Again, the court finds that this evidence is more equivocal than Richards suggests, because the CFO, Paul Francis, actually testified that it was only at the point that Richards settled her worker's compensation claim that Farner–Bocken officials recognized that she had reached maximum medical improvement, making her continuation in temporary employment inappropriate. Moreover, in the same set of questions, Mr. Francis affirmed that it was his view that Richards in fact had an "absolute" right to file for worker's compensation without facing consequences. *See* Francis Deposition at p. 34, *l.* 4, to p. 35, *l.*15. Thus, it is only by ignoring Mr. Francis's reasoning concerning the nature of the connection between the settlement of the worker's compensation claim and the decision to terminate

Richards, and further by ignoring his recognition of Richards's right to file a worker's compensation claim without consequences, that Mr. Francis's statement is an "acknowledgment" that the settlement was "a factor" in the decision to terminate Richards in the sense of an inappropriate motivation. The court therefore has considerable doubt that Mr. Francis's statement is the "something more" beyond temporal proximity that Richards must show to prove or generate genuine issues of material fact on her claim of wrongful discharge.

■ However, in this case, Richards offers yet more, in the form of evidence giving rise to an inference of falsity of Farner–Bocken's proffered legitimate reasons for discharging Richards. As explained above, there is a genuine issue of material fact as to whether Richards's assignment to the cigarette hand-stamping position was only "temporary, light-duty" work, and also a genuine issue of material fact as to whether the position was actually "eliminated" at the time Richards was terminated. Therefore, there are genuine issues of material fact as to whether Farner–Bocken's proffered reasons were merely a pretext for retaliatory conduct.

On the present record, a jury question is presented on Richards's claim that she was wrongfully discharged, in violation of public policy, for filing worker's compensation claims, and Farner–Bocken's motion for summary judgment on this claim will be denied.

### F. Punitive Damages

Finally, Farner–Bocken seeks summary judgment on Richards's prayer for punitive damages.[5] Farner–Bocken contends that punitive damages cannot be awarded

pursuant to 42 U.S.C. § 1981a and *Kolstad v. American Dental Association,* 527 U.S. 526, 534, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999), in the absence of "malice" or "reckless indifference" to a perceived risk that the employer's actions may violate federal law, and there is no such evidence here. Thus, Farner–Bocken's argument is framed in terms of punitive damages on Richards's remaining claim subject to § 1981a, which is her disability discrimination claim. Richards relies instead on the standards for punitive damages under Iowa law, Iowa Code § 668A.1(1)(a), which provides that punitive damages can be awarded only if "the conduct ... from which the claim arose constituted willful and wanton disregard for the rights or safety of another." Richards then argues the adequacy of the record to defeat summary judgment as to punitive damages on her state common-law claim of wrongful discharge in violation of public policy. Thus, it is clear that the parties are talking about different standards for the award of punitive damages on different claims.

■ Moreover, because Farner–Bocken has identified the basis for its contention that it is entitled to summary judgment on any claim for punitive damages pursuant to 42 U.S.C. § 1981a—*i.e.,* on Richards's disability discrimination claim pursuant to the ADA, where the ADEA allows only for liquidated damages for age discrimination, not punitive damages, *see* 29 U.S.C. § 626(b)—it has met its "initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex Corp.,* 477

---

**5.** Just recently, the United States Supreme Court explained that "[a] jury's assessment of the extent of a plaintiff's injury is essentially a factual determination, whereas its imposition of punitive damages is an expression of its moral condemnation." *Cooper Indus., Inc. v. Leatherman Tool Group, Inc.,* —— U.S. ——, ——, 121 S.Ct. 1678, 1683, 149 L.Ed.2d 674 (2001).

U.S. at 323, 106 S.Ct. 2548); *see also Rose–Maston,* 133 F.3d at 1107; *Reed,* 7 F.3d at 810. However, Richards has failed to respond by identifying any portions of the record or designating "specific facts showing that there is a genuine issue for trial" concerning punitive damages on her disability discrimination claim. FED. R. CIV. P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Rabushka ex. rel. United States v. Crane Co.,* 122 F.3d 559, 562 (8th Cir.1997), *cert. denied,* 523 U.S. 1040, 118 S.Ct. 1336, 140 L.Ed.2d 498 (1998); *McLaughlin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 511 (8th Cir.1995); *Beyerbach,* 49 F.3d at 1325. Therefore, because Richards has failed to make a sufficient showing on her claim for punitive damages for disability discrimination, Farner–Bocken is "entitled to judgment as a matter of law" as to such a claim. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548; *In re TMJ Litig.,* 113 F.3d at 1492.

Indeed, Richards failed to pray for punitive damages on her disability discrimination claim at all, because she has only prayed for "punitive damages for injuries suffered *as a result of Defendant's violation of 42 U.S.C. § 2000e et. seq.*" Complaint, § VI, ¶ 61(d) (emphasis added). This deficiency in pleading also applies to Richards's attempt to generate a genuine issue of material fact as to punitive damages on her "wrongful discharge" claim. Although Richards has attempted to designate specific facts sufficient to generate genuine issues of material fact regarding her entitlement to punitive damages on her common-law claim, the court finds that she made no prayer for punitive damages on that claim, either. Instead, on her claim of wrongful discharge in violation of public policy, Cause of Action E in her Complaint, Richards "request[ed] relief for damages as more fully set forth in Section VI. below." *See* Complaint, § V, subsec. E, ¶ 59. Nowhere in Section VI of the Complaint is there a prayer for punitive

damages, or for that matter any other relief, on the wrongful discharge claim. *See id.,* § VI, ¶ 61(d) (prayer for punitive damages for violations of Title VII). Therefore, Richards cannot obtain such relief in the absence of leave to amend, assuming the evidence might otherwise warrant submitting punitive damages on the wrongful discharge claim to the jury.

### G. Deficiencies In Pleading Relief

The court deems it appropriate to bring to the parties' attention other deficiencies in pleading in Richards's prayer for relief, so that the parties are clear not only about what claims remain at issue, but what relief can be obtained on those claims in the wake of this ruling on Farner–Bocken's motion for summary judgment. The court hopes thereby to avoid last-minute disputes, just before or during trial, about the nature of relief available in this case.

The relief expressly prayed for on Richards's age and disability discrimination claims is declaration of a violation of the ADEA and ADA and the age and disability discrimination prohibitions of the ICRA and direction for affirmative steps to eliminate the effects of such discrimination, *see* Complaint, Section VI, ¶ 61(a) (citing IOWA CODE CH. 216, 29 U.S.C. § 623 *et seq.,* and 42 U.S.C. § 12102 *et seq.*) & (b); an award of back pay, front pay, and lost past and future benefits, *see id.* at ¶ 61(c) (again expressly citing IOWA CODE CH. 216, 29 U.S.C. § 623 *et seq.,* and 42 U.S.C. § 12102 *et seq.*); and reinstatement, *see id.* at ¶ 61(f) (praying for reinstatement with benefits that "would have accrued but for Defendant's discriminatory practices toward [Richards]"). However, there is no allegation that any age discrimination was "willful," nor is there any prayer for liquidated damages for age discrimination under the ADEA. *See* 29 U.S.C. § 626(b). There is no prayer for compensatory or punitive damages for disability discrimina-

tion, but only for discrimination in violation of Title VII, *see* Complaint, Section VI, ¶ 61(d), and the court granted summary judgment above in favor of Farner–Bocken on any prayer for punitive damages for disability discrimination, because Richards failed to respond to that part of Farner–Bocken's motion for summary judgment. Moreover, Richards has not prayed for attorney fees or costs should she prevail on her age or disability discrimination claims, but only for costs and attorney fees "as provided by 42 U.S.C. § 2000e–5(k) of Title VII of the Civil Rights Act of 1964 as amended." *See* Complaint, Section VI, ¶ 61(e). Again, no Title VII claim remains in this action with Richards's acquiescence in the dismissal of her gender discrimination claims.

The pleading deficiencies are more dire as to Richards's remaining claim of wrongful discharge in violation of public policy, notwithstanding that, in the "wrongful discharge" claim alleged in Cause of Action E of the Complaint, Richards prayed for "damages as more fully set forth in Section VI. below." *See id.* at Cause of Action E, ¶ 59. This is so, because, with one exception, *none* of the paragraphs of the Complaint making prayers for specific kinds of relief refers in any way to relief on a state common-law claim, retaliation claim, or "wrongful discharge" claim. That sole exception is subparagraph (b), which prays for judgment "[d]irecting Defendant to take affirmative steps as are necessary to ensure that the effects of these unlawful employment practices and tortuous [sic; read "tortious"] conduct are eliminated." *See id.* at Section VI, Relief, ¶ 61(b). Consequently, in the absence of leave to amend, Richards cannot obtain any damages on her remaining "wrongful discharge" claim.

### III. CONCLUSION

Certain of Richards's claims are not at issue. Richards has acquiesced in dismiss-

al of her gender discrimination claims in Cause of Action A of her Complaint, her Title VII claim, and that part of Cause of Action D asserting gender discrimination in violation of Iowa Code Ch. 216. Moreover, Richards failed to include in her administrative claims any retaliation claims pursuant to the federal anti-discrimination statutes, and she is consequently barred from pursuing such claims in federal court, while her claims of retaliation premised on discriminatory conduct that is prohibited by the ICRA are "preempted" by the ICRA. Consequently, Farner–Bocken is entitled to summary judgment on all of Richards's retaliation claims with the exception of her claim of retaliation, in violation of public policy, for discharging her for filing worker's compensation claims.

Farner–Bocken is also entitled to summary judgment on any portion of any of Richards's federal claims that is based on conduct that occurred prior to January 5, 1998, and on any portion of any of her state-law statutory claims that is based on conduct that occurred prior to May 5, 1998, on the ground that such claims were not the subject of a timely administrative charge. Evidence of such conduct is nevertheless relevant and likely admissible as evidence of discrimination.

As to truly disputed claims, Farner–Bocken's motion for summary judgment is less successful. The court finds that genuine issues of material fact preclude summary judgment on Richards's age discrimination claims pursuant to the ADEA and the ICRA and her disability discrimination claims pursuant to the ADA and the ICRA, although, as explained above, the scope of the disability discrimination claim has been restricted to a claim premised on discriminatory discharge from a "permanent" job in the cigarette area. Moreover, Richards has generated genuine issues of material fact on her state common-law

claim of wrongful discharge, in violation of public policy, for filing worker's compensation claims. Therefore, Farner–Bocken's motion for summary judgment will be denied as to these claims.

As to the last portion of its motion, Farner–Bocken is entitled to summary judgment on any prayer for punitive damages on her disability discrimination claims, because Richards failed to generate genuine issues of material fact as to entitlement to such relief in response to Farner–Bocken's motion for summary judgment. As noted above, Richards did not pray for liquidated damages on her age discrimination claim under the ADEA, nor did she pray for punitive damages, or any other damages relief, on her claim of wrongful discharge in violation of public policy.

THEREFORE,

1. Farner–Bocken's motion for summary judgment is **granted** as to claims of gender discrimination in Cause of Action A and Cause of Action D in Richards's Complaint.

2. Farner–Bocken's motion for summary judgment is **granted** as to any retaliation claim, with the exception of Richards's claim of retaliation, in violation of public policy, for discharging her for filing worker's compensation claims, as stated in Cause of Action E of her Complaint.

3. Farner–Bocken's motion for summary judgment is **granted** as to any portion of any of Richards's federal claims that is based on conduct that occurred prior to January 5, 1998, and on any portion of any of her state statutory claims that is based on conduct that occurred prior to May 5, 1998, on the ground that such claims were not the subject of a timely administrative charge. Evidence of such conduct is nevertheless relevant and likely admissible as evidence of discrimination.

4. Farner–Bocken's motion for summary judgment is **denied** as to Richards's claims of age discrimination in Causes of Action C and D.

5. Farner–Bocken's motion for summary judgment is **denied** as to Richards's claims of disability discrimination in Causes of Action B and D.

6. Farner–Bocken's motion for summary judgment is **denied** as to Richards's claim of wrongful discharge, in violation of public policy, for filing worker's compensation claims in Cause of Action E.

7. Farner–Bocken's motion for summary judgment is **granted** as to Richards's prayer for punitive damages on her disability discrimination claim.

**IT IS SO ORDERED.**